UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MATTHEW JOHN MATAGRANO

Plaintiff(s),

vs.

REGINA MILES, MD, et al;

Defendant(s).

Civil Case No.: 9.05cv1459
DMH
RFT

COMPLAINT PURSUANT
TO THE AMERICANS
WITH DISABILITIES ACT

*TRIAL BY JURY*
DEMANDED

Plaintiff(s) in the above-captioned action, allege(s) as follows:

## JURISDICTION

1.     This is a civil action seeking judgment, relief and/or damages brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., as amended, for discrimination based upon a disability and the failure to accommodate same.  This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343(4).

## PARTIES

2.   a.   Plaintiff:   Matthew John Matagrano

Address:   #04-A-5883   C# 183762
Central N.Y. Psychiatric Center
P.O. Box 300
Marcy, N.Y. 13403 - 0300

b.   Plaintiff: _____

Address: _____

_____

_____

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
NOV 2 1 2005
AT_____O'CLOCK_____
Lawrence K. Baerman, Clerk - Syracuse

Additional plaintiffs may be added on a separate sheet of paper.

FORM E(1)(d).1

3.  a.  Defendant: Regina Miles, MD
        Official Position: Assistant Psychiatrist
        Address: Central New York Psychiatric Center
        Po. Box 300
        Marcy, N.Y. 13403-0300

    b.  Defendant: Robert Carr
        Official Position: Social Worker
        Address: Central New York Psychiatric Center
        Po. Box 300
        Marcy, N.Y. 13403-0300

    c.  Defendant: Ann Andzel
        Official Position: Correction Counselor, Manual Communication
        Address: Wende Correctional Facility
        3040 Wende Rd Po. Box 1187
        Alden, N.Y. 14004-1187

Additional defendants may be added on a separate sheet of paper.

4.  My disability is as follows:

Plaintiff is bi-laterally hearing impaired requiring bi-lateral hearing aids. And as well other reasonable accommodations such as close-caption television; preferred seating; and tele-phone amplification. Plaintiff also suffers from a psychiatric disability of Bi-polar Disorder and Boderline personality disorder.

FORM E(1)(d).2

## PARTIES CONT'D

3.   d.   Defendant: MS. Christine
Official Position: Social Worker
ADDRESS: Elmira Correctional Facility
P.O. Box 500
Elmira, N.Y. 14902 - 500


e.   Defendant: John Doe
Official Position: Director office of Risk Management
ADDRESS: Central New York Psychiatric Center
P.O. Box 300
Marcy, N.Y. 13403 - 0300


f.   Defendant: John Dinardo
Official Position: Security Hospital Treatment Assistant
ADDRESS: Central New York Psychiatric Center
P.O. Box 300
Marcy, N.Y. 13403 - 0300


All defendant's are sued in their individual and official capacity.

5.    The conduct complained of in this action involves:
      (Check all that apply)

        (A) ___        Failure to employ.

        (B) ___        Termination of employment.

        (C) ✔        Denial of participation in public service or program.

        (D) ✔        Failure to make alterations to accommodate disability.

        (E) ✔        Retaliation.

        (F) ___        Other acts as specified below:

_____

_____

_____

_____

_____

6.                              **FACTS**

On the following page, set forth the facts of your case which substantiate your claim of discrimination.  List the events in the order they happened, naming defendants involved, dates and places.

**Note**: Each fact should be stated in a separate paragraph; paragraphs
should be numbered sequentially.

You must include allegations of wrongful conduct as to EACH
and EVERY defendant in your complaint.

You may use additional sheets as necessary.

_____

_____

_____ — SEE ATTACHED — _____

_____

_____

_____

_____

FORM E(1)(d).3

_____
_____
_____
_____
_____
_____
_____
_____
_____

7.    **PRAYER FOR RELIEF**

WHEREFORE, plaintiff(s) request(s) that this Court grant the following relief:

Plaintiff herein request that this Court order the defendant's to provide the reasonable accommodations as needed and for the defendants to be ordered to pay punitive damages in the amount deemed proper and equitable by a Jury. Plaintiff request decletory relief stating that his rights under the American's with Disabilites Act.

I declare under penalty of perjury that the foregoing is true and correct.

DATED:

November 16, 2005

Matthew John Matagrano
Signature of Plaintiff(s)
(all Plaintiffs must sign)

FORM E(1)(d).4

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK
_____x

MATTHEW JOHN MATAGRANO,

                        Plaintiff,                    CIVIL CASE NO.

                                                      PRO - SE

            vs.                                       COMPLAINT
                                                      42 U.S.C. 12101

REGINA MILES, MD ; ROBERT CARR ;                      TRIAL BY JURY
ANN ANDZEL ; MS. CHRISTINE ;                              DEMANDED
 JOHN DOE ; JOHN DINARDO ;
                        DEFENDANT(S).
_____x


## STATEMENT OF FACTS


    1. Plaintiff entered the custody of the
New York Department of Correctional Services (hereinafter
"Department") on November 9, 2004.

    2. On or about March 9, 2005 plaintiff was
housed in the Special Housing Unit of the Eastern N.Y.
Correctional Facility (hereinafter "Eastern) for a 24
hour period of one to one suicide observation.

    3. On or about March 28, 2005 at
approximately 11:30 p.m. at "Eastern" plaintiff
attempted suicide in his cell using a "Department"
issued shaving razor blade. No mental health staff were there.

    4. Plaintiff was transferred to Elmira
Correctional Facility Mental Health Unit for a ten day

- 2 -

Observation.

5. On or about March 30, 2005, plaintiff spoke with Dr. Young, MD via Tele-Med and defendant Ms. Christine was present in the room with the plaintiff

6. Ms. Christine was plaintiff's primary therapist for the time plaintiff was being housed in the mental health Observation unit at Elmira Correctional Facility (hereinafter "Elmira").

7. Plaintiff advised Ms. Christine that he was bi-laterally hearing impaired; without his hearing aids and that he was feeling depressed.

8. Defendant Ms. Christine advised plaintiff that he would only be at "Elmira" for approximately 14 days and that since "Eastern" was still his owning facility there wasn't anything that could be done about the hearing aids. Plaintiff had trouble hearing.

9. Plaintiff's domestic partner George C. Polis within 3 days of plaintiff arriving at "Elmira" ▓▓▓▓ that plaintiff wore 2 hearing aids and also informed her of plaintiff's extensive psychiatric history.

10. Plaintiff's psychiatric diagnosis was Bi-polar Disorder, and Borderline Personality disorder.

11. Plaintiff remained in the mental Health Unit at "Elmira" until approximately April 13, 2005, when the plaintiff was transferred to C-Block One gallery in "Elmira" general population. Around other prisoners who did not have a mental health problem and staff who didn't deal with

— 3 —

the disabled.

12. Despite the severe self abuse plaintiff committed on both his forearms; extensive psychiatric history involving over 11 inpatient psychiatric hospitalizations; the fact that plaintiff's medication was discontinued and changed and; his hearing impairment, plaintiff was never sent or even considered for further evaluation at the Central New York Psychiatric Center at Marcy, N.Y. (hereinafter "C.N.Y.P.C.")

13. On or about May 2, 2005 plaintiff was transferred to the Wende Correctional Facility. (hereinafter "Wende") where plaintiff was housed in the general population with no hearing aids.

14. On or about May 6, 2005 plaintiff had his initial interview with Corrections Counselor A. Lott. Plaintiff during this interview expressed his need for reasonable accommodations. Ms. Lott advised plaintiff that she had already notified Ms. A. Andzel who is the Corrections Counselor who works with the sensorial disabled that plaintiff had arrived at "Wende".

15. On or about May 9, 2005 plaintiff started to attend the mandatory new inmate orientation at "Wende" with no hearing aids or other reasonable accommodations to his disability.

16. On or about May 9, 2005 plaintiff sent via institutional mail an interview slip to Ms. Helen Hunt, Deputy Superintendent of Program Services; and

- 4 -

Ms. A. Andzel, Corrections Counselor-Manual Communications, requesting reasonable accommodations for general programming purposes.

17. On or about June 15, 2005 plaintiff sent Ms. A. Andzel a letter again asking for reasonable accommodations for plaintiff's upcoming starting programs of Residential Substance Abuse Treatment and Anger Regression Training (hereinafter "R.S.A.T. and A.R.T. respectively). The programs were to begin on June 20, 2005. No response was received.

18. On June 20, 2005 plaintiff begun attending the R.S.A.T. and A.R.T. programs but with no other accommodations than his 2 hearing aids.

19. During the first day of R.S.A.T. class plaintiff expressed his concern for the need of close-caption, preferred seating to Ms. Carroll, the Instructor and Mr. Lewis Urban, R.S.A.T. Coordinator.

20. On or about July 8, 2005 plaintiff filed a institutional grievance at "Wende" (No. WDE23439-05) requesting reasonable accommodations while attending the R.S.A.T. and A.R.T. programs.

21. Plaintiff's administrative remedies were exhausted due to Central Office Review Committee's decision dated October 19, 2005 upholding the Superintendent's decision that plaintiff should request the written material for these classes.

22. Unfortunately the requested material was not available and the intructive video cassettes were not coded for close-caption due to the age that

they were made.

23. On or about July 29, 2005 plaintiff met with A. Andzel and Lewis Urban with reguard to not being able to receive adequate accommodations for his disability. The outcome of this meeting was the plaintiff signing out of the R.S.A.T. program.

24. On or about August 16, 2005 plaintiff underwent a new audiology examination.

25. As a result of this new examination plaintiff was fitted for new hearing aids bi-laterally. It was further determined by Mr. Gullo, the Audiologist at "Wende" that plaintiff's loss of hearing had become worse.

26. On or about August 27, 2005 plaintiff was housed in the Mental Health Unit - Observation Cell, where he remained until September 8, 2005.

27. On or about September 8, 2005 plaintiff was transfered from the "Department" and committed to the care and custody of the New York State Office of Mental Health at Central New York Psychiatric Center. (hereinafter "C.N.Y.P.C.")

28. Upon his arrival plaintiff was interviewed by Dr. Regina Miles, Md assistant psychiatrist at "C.N.Y.P.C."

29. During this interview in the presence of William Devies a Security Hospital Treatment Assistant (hereinafter "S.H.T.A.") plaintiff informed Dr. Miles, MD

— 6 —

that he was bi-laterally hearing impaired.

30. Plaintiff in intricate detail explained to Dr. Miles, Md, his long and extensive mental health history.

31. On the morning of September 9, 2005 "S.H.T.A." Steve Cappolla brought plaintiff to a meeting with the treatment team. Present was Robert Carr, Social work; Jim Burton, Unit Manager; Pat Parottee, Social Worker; Chris Fullers, Ward Nurse and; Dr. E. Debroize, psychologist.

32. Mr. Robert Carr as plaintiff's assigned primary therapist spoke with plaintiff about the reason for being at C.N.Y.P.C. and any medical problems that may need to be addressed.

33. Plaintiff explained to Robert Carr that he was bi-laterally hearing impaired and would need reasonable accommodations to participate in treatment and thereputic programs.

34. On or about September 16, 2005 plaintiff spoke with Robert Carr and again requested assistance in obtaining hearing aids and reasonable accommodations.

35. Mr. Bob Carr told plaintiff that "C.N.Y. P.C." is not responsible to accommodate him and that he would have to wait until he returned to the custody of the "Department".

36. On or about September 19, 2005 plaintiff wrote a letter to Robert Raymond, Acting ADA

- 7-

Coordinator with the Department of Correctional Services.

37. In his letter plaintiff requested assistance from the "Department" in obtaining his hearing aids that were done on his August 16, 2005 audiology visit at "Wende" and that the aids be forwarded to "C.N.Y.P.C." c/o Bob Carr.

38. On or about September 20, 2005 plaintiff wrote to Ms. A. Andzel, Corrections Counselor at "Wende" to request her assistance in obtaining his hearing aids from the institution.

39. Plaintiff on this day spoke with Dr. Regina Miles, Md about obtaining his hearing aids, and accommodations. Plaintiff was having difficulty hearing.

40. Dr. Miles, md advised plaintiff that he would not get his hearing aids or any accommodations while here at "C.N.Y.P.C." this was said in the presence of "S.H.T.A." Tim Brown and Ms. Andrea Leah, Ward nurse.

41. On or about October 18, 2005 plaintiff spoke with Robert Carr with regard to plaintiff being non-medication compliant and that he would not get his hearing aids until he became medication compliant.

42. On or about October 24, 2005 plaintiff received a letter response from Robert Raymond, Acting ADA Coordinator for the "Department" answering

— 8 —

plaintiff's letter dated September 19, 2005 that requested assistance in locating plaintiff's hearing aids. The letter read in part:

"I have been advised that your hearing aid molds were taken in August 2005, and the actual hearing aids have been located. Ms. Ann Andzel, Correction Counselor, Manual Communications, has advised me that Mr. Gulo, Audiologist, has them. She will be contacting your primary therapist, Mr. Robert Carr, to arrange delivery to you."

43. A copy of the above letter was cc: to Robert Carr and Ms. Ann Andzel.

44. On or about November 2, 2005 plaintiff was given his bi-lateral hearing aids by Ms. Cindy Law, Nurse Practioner.

45. On or about November 2, 2005 plaintiff spoke with Bob Carr, his primary therapist in the conference room on 201. Plaintiff requested to Mr. Carr since the hospital was unable to accommodate plaintiff's disability, could he contact the Deputy Superintendent for Security at "Wende" and attempt to obtain his phone amplifier from his property. Plaintiff was told no.

46. On or about November 4, 2005. plaintiff wrote a letter to Director of Risk Management regarding the hospital's inability and refusal to

- 9 -

provide Reasonable Accommodations in accordance
with the American's With Disabilites Act of 1990.
Thus exhausting his administrative remedies
for the denial of accommodations.

47. On or about November 10th, 2005 plaintiff
met with the Director of the Office of Risk Management
concerning his allegations of discrimination and
denial of reasonable accommodations.

48. During the interview with John Doe,
Director of Risk Management plaintiff informed him
that "S.H.T.A." Chad Asch and John Dinardo
were overheard by plaintiff and another patient/inmate
making derogatory comments about the plaintiff's
sexual orientation. Plaintiff also informed him of the
numerous unsuccessful attempts he had made with
Robert Carr in obtaining accommodations for his
hearing impairment. And that plaintiff couldn't hear during programs.

49. On or about November 12, 2005 at approx.
6:50 p.m. in the dayroom on ward 201 plaintiff
witnessed "S.H.T.A." John Dinardo restrain
another patient by grabbing the patient by his ankles,
dragging him across the floor, swinging the patient
and throw him against the wall. Plaintiff confronted
"S.H.T.A." John Dinardo and asked him was that
really necessary. While plaintiff was in a verbal
altercation another staff Frank Rios, dived
from a cushion chair and grabbed plaintiff

— 10 —

in a tight choke hold and brought him down to the floor smashing his face. Plaintiff's left hearing aid came out of his ear. While plaintiff was on the floor and "S.H.T.A." Frank Rios had his arm wrapped around the neck of the plaintiff, John Dinardo twisted plaintiff's arm up his back and dragged plaintiff out of the day room. They brought plaintiff into the side room where John Dinardo threatened plaintiff by saying "What you want to do now faggot"? Plaintiff was medicated by Dr. Hernandez. While in the side room plaintiff had the rubber mold of his left hearing aid between his lips looking at the piece that came loose. "S.H.T.A." John Dinardo snatched the hearing aid out of plaintiff's hand and forcefully twisted the right hearing aid out of plaintiff's ear. And told plaintiff "tell risk management that". Refering to earlier complaints made against John Dinardo and Chad Asch.

50. On or about November 12, 2005 plaintiff wrote a letter of complaint to John Doe, Director Office of Risk Management.

51. On or about November 14, 2005 plaintiff signed up to see Dr. Regina Miles, Md and Robert Carr, Social Worker.

52. Neither person saw ~~~~~~~~ the plaintiff.

— 11 —

53. On November 14, 2005 plaintiff did see Ms. Cindy Law, Nurse Practioner and advised her that his hearing aids were taken.

54. Ms. Law as the Medical Specialist for plaintiff's ward was never informed by Dr. Regina Miles, Md, Robert Carr or any other member of the treatment team that plaintiff's hearing aids were Confiscated.

55. On November 14, 2005 plaintiff wrote another letter to John Doe, Director of Risk Management concerning the incident on November 12, 2005, and the fact that plaintiff was being retaliated against by withholding his needed hearing aids.

56. Thus exhausting his administrative remedies as to the excessive use of force incident on November 12, 2005, the retalitory treatment by "S.H.T.A." John Dinardo, and the refusal of Dr. Regina Miles, Md to return plaintiff's bi-lateral aids.

57. On November 14, 2005, plaintiff also mailed a letter of complaint to Mental Health Legal Service.

58. On November 15, 2005 plaintiff signed up to see Dr. Regina Miles, MD, and Robert Carr, Social Worker.

59. Again neither person came to see the

— 12 —

plaintiff.

60. On or about November 15, 2005 at approximately 9:30 a.m. plaintiff spoke with Ms. Cindy Law who advised plaintiff that she inspected his hearing aids and 1) Found them to be working and; 2) With no apparent damage.

61. Plaintiff again saw Ms. Law this day at approximately 2:50 p.m. to be interviewed about the incident with "S.H.T.A." John Dinardo, and Frank Rios. A progress note was entered into plaintiff's Chart.

62. On November 15, 2005 at approximately 4:00 p.m. plaintiff was interviewed by Mr. Abdul From the Office of Risk Management at "C.N.Y.P.C. With regard to his two letters of Complaint.

Dated: November 16 , 2005
       Marcy, N.Y.

Respectfully Submitted,

Matthew J. Matagrano
Plaintiff Pro-se
C# 183762  D# 04A5883