UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
MATTHEW JOHN MATAGRANO,
                                    Plaintiff

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
JUN - 7 2006
AT_____ O'CLOCK
Lawrence K. Baerman, Clerk - Syracuse

            - VS -
OFFICE OF MENTAL HEALTH;
REGINA MILES, MD; ROBERT CARR;
ANN ANDZEL; CHRISTINE; ~~JOHN~~
ANTHONY DEVITO ~~DOE~~; JOHN DINARDO; PATRICK
        ; CINDY LAW;
                DEFENDANTS.

SUPPLEMENTAL
COMPLAINT
42 U.S.C. §12101

9: 05 CV 1459
            (DNH)(RFT)

TRIAL BY JURY
DEMANDED

## PRELIMINARY STATEMENT

This is a civil rights action filed by
Matthew John Matagrano, a mentally ill and
physically disabled prisoner for damages and
injunctive relief under 42 U.S.C. §12101 et
seq., as amended and; Section 504 of
the Rehabilitation Act of 1973 29 U.S.C.
§794; alleging discrimination against plaintiffs
disability, retaliation against the plaintiff
for excercising his rights under the American's
With Disabilites Act, for defendant's denial to
provide reasonable accommodations, For
defendant's using the confiscation of his
bi-lateral hearing aids as a retalitory
punishment, and for denial of medical

treatment, at all times mentioned the defendants acted with bad faith and with malice and the plaintiff further alleges as follows:

## JURISDICTION AND VENUE

1) This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 12101 et seq; and Section 504 of the Rehabiliation Act of 1973 29 U.S.C. § 794. The Court has Jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343 (a) (1) (2) (3) and 2201.

2) Venue is proper in this District pursuant to 28 U.S.C. 1391 (b) (2) because the majority of the events giving rise to the cause of action occurred at Central New York Psychiatric Center in Marcy, New York which is located in the Northern District of this State.

PAGE 3

## PARTIES

4) Plaintiff Matthew John Matagrano is and was at all times relevant hereto a prisoner in the custody of New York State Department of Correctional Services (NYS D.O.C.S.) and or a mentally ill prisoner in the custody of New York State Office of Mental Health;

5) Defendant OFFICE OF Mental Health was and is at all times relevant herein the custodial agency charged with the mental health care of prisoners in the New York Department of Correctional Services at various satellite Units and charged with the custodial care of prisoners determined to be mentally ill by judicial order and housed at the Central New York Psychiatric Center (C.N.Y.P.C.) and located at 44 Holland Avenue, Albany, N.Y. 12226;

6) Defendant Regina Miles, md was at all times relevant herein employed as an Assistant Psychiatrist for the New York State Office of Mental Health at C.N.Y.P.C. located at Po. Box 300 Old River Rd Marcy, N.Y. 13403-0300 and was assigned as plaintiff's psychiatrist;

Page 4

7) Defendant <u>Robert Carr</u>, was at all times relevant herein employed as a Social Worker for the New York State Office of Mental Health at C.N.Y.P.C. located at P.o. Box 300 Old River Road, Marcy N.Y. 13403 - 0300 Defendant Carr was plaintiff's assigned primary therapist;

8) Defendant <u>Ann Andzel</u>, was at all times relevant herein employed as an Corrections Counselor for the New York Department of Correctional Services at the Wende Correctional Facility located at ▮▮▮▮▮▮ 3040 Wende Rd P.o. Box 1187 Alden, N.Y. 14004 - 1187 Defendant Andzel was plaintiff's assigned Counselor at Wende Correctional Facility;

9) Defendant <u>Christine _____</u> was at all times relevant herein employed as a Social Worker for the New York State Office of Mental Health at Elmira Correctional Facility Mental Health Unit located at P.o. Box 500 ELMIRA N.Y. 14902 - 0500;

Page 5

10) Defendant ~~John Doe~~, ANTHONY DEVITO, was at all times
relevant herein employed as the Associate Director of
Risk Management for the New York State Office of
Mental Health at C.N.Y.P.C. located at P.O. Box
300 Marcy, N.Y. 13403-0300 ;

11) Defendant John Dinardo, was at all times
relevant herein employed as an Security Hospital
Treatment Assistant for the New York State Office
of Mental Health at C.N.Y.P.C. located at P.O.
Box 300 Marcy, N.Y. 13403-0300 ;

12) Defendant Patrick _____, was at all times
relevant herein employed as a Nurse for the New
York State Office of Mental Health at C.N.Y.P.C.
located at P.O. Box 300 Marcy, N.Y. 13403-0300 ;

13) Defendant Cindy Law, was at all times
relevant herein employed as an Nurse Practioner
for the New York State Office of Mental Health
at C.N.Y.P.C. located at P.O. Box 300 Marcy, N.Y.
13403-0300 ;

ALL DEFENDANT'S ARE SUED IN THEIR INDIVIDUAL
AND OFFICIAL CAPACITES.

PAGE 6

## BACKGROUND

14) On November 9, 2004 plaintiff was received at the Down State Correctional / Reception Center.

15) While at Downstate plaintiff was seen by John Surhan, Audiologist in order to be assessed for his bi-lateral hearing impairment.

16) On or about December 2, 2004, plaintiff was transferred to the Eastern Correctional Facility Sensorial Disabilites Unit for extended program assessment.

## STATEMENT OF FACTS

17) While at Eastern Correctional Facilty plaintiff was assessed and determined to be "HL 20" medical classification, entitling him to the reasonable accommodations of hearing aids/ batteries; Telephone Amplification; Preferred Seating and; Closed-Caption Television. (CCTV) Plaintiff is a "qualified individual" with a disability as defined under the American's With Disabilites Act.

Page 7

18) On or about March 9, 2005 plaintiff went to emergency sick call to request to be seen by his mental health Counselor.

19) Plaintiff was interviewed by Mental Health and housed in the Special Housing Unit of Eastern Correctional Facility (hereinafter "Eastern") for a period of twenty four hours for one to one Suicide Observation.

20) Plaintiff on or about March 10, 2005 was released to general population despite his expressing feelings of severe depression.

21) On or about March 28, 2005 at approximately 11:30 pm plaintiff was severly depressed, hearing voices and shaking.

22) Plaintiff broke his shaving razor to get the razor blade and use the blade to self mutilate both Left and right Forearms/wrists.

23) On or about March 29, 2005 at approximately 9:00 a.m. plaintiff was found in his cell at "Eastern" and brought to medical.

Page 8

24) Due to the fact that "Eastern" does not have a Mental Health Unit for Observation, plaintiff was transferred to Elmira Correctional Facility Mental Health Unit.

25) On or about March 30, 2005 plaintiff spoke with Dr. Young, MD via video conference and defendant Christine was present in the room.

26) Defendant Christine was plaintiff's primary therapist for the time plaintiff was being housed in the Mental Health Observation Unit at Elmira Correctional Facility.

27) Plaintiff told defendant Christine that he was bi-laterally hearing impaired, and that he did not have his hearing aids. Also that plaintiff was still depressed.

28) Defendant Christine told plaintiff that he would only be at Elmira Correctional Facility for approximately 14 days and that since "Eastern" is plaintiff's owning facility there

Page 9

isn't anything that could be done about the hearing aids.

29) Plaintiff was experiencing difficulties hearing.

30) On or about March 31, 2005 plaintiff's domestic partner called Ms. Christine and told her of plaintiff's need for his hearing aids, and advised her of plaintiff's extensive psychiatric history.

31) Plaintiff's psychiatric diagnosis is Bi-polar Disorder and Borderline Personality Disorder.

32) On or about April 4, 2005 plaintiff wrote to the American's with Disabilites Act Coordinator for the New York State Department of Correctional Services requesting a transfer to a facility that can accommodate the hearing impaired/deaf.

33) On or about April 7, 2005 plaintiff spoke with Dr. Brown, md a psychiatrist

Page 10

For the Office of Mental Health at Elmira Correctional Facility.

34) Plaintiff requested of Dr. Bown assistance with attaining his hearing aids and to be transfered to a Facility that could help with his psychological problems and physical.

35) On or about April 13, 2005 plaintiff left the Mental Health Unit at Elmira Correctional Facility and was placed in to the general population.

36) Plaintiff was housed around other prisoners whom were not suffering from a mental health or physical disability.

37) The Correctional Staff were unable to work with the plaintiff because they were untrained in dealing with the Sensorially disabled.

38) Despite the severe self abuse plaintiff committed, his extensive psychiatric history involving over 11 in-patient psychiatric hospitalizations, the fact

Page 11

that his medication was discontinued then changed, and his bi-lateral hearing impairment Plaintiff was never considered for Further evaluation at Central New York Psychiatric Center. (hereinafter "C.N.Y.P.C.")

39) On or about May 2, 2005 plaintiff was transferred to Wende Correctional Facility. (hereinafter "Wende")

40) Plaintiff was housed in general population with no reasonable accommodations.

41) On or about May 6, 2005 plaintiff had his initial interview with Corrections Counselor A. Lott.

42) During this interview plaintiff expressed his need For reasonable accommodations.

43) Ms. Lott advised plaintiff that she had already notified Ms. A. Andzel the Counselor For the Sensorially Disabled that he had arrived at "Wende".

Page 12

44) On or about May 9, 2005 plaintiff begun to attend a mandatory Facility Orientation class.

45) Plaintiff had no hearing aids or reasonable accommodations.

46) On or about May 9, 2005 plaintiff sent a written slip via institutional mail to Ms. Helen Hunt Deputy Superintendent of Program Services, and Ms. Andzel Corrections Counselor Manual Communications, requesting reasonable accommodation for general programming purposes.

47) On or about June 3, 2005 plaintiff had his initial interview with his assigned Mental Health counselor.

48) Plaintiff had already been at "Wende" For Thirty (30) days after having been released from the Mental Health Observation Unit at Elmira Correctional Facility.

Page 13

49) On or about June 15, 2005 plaintiff sent defendant Andzel a letter, again asking for reasonable accommodations, specifically for the programs of Residental Substance Abuse Treatment (R.S.A.T.) and Aggression Replacement Training (A.R.T.) which would begin on June 20, 2005.

50) No response was received.

51) On June 20, 2005 plaintiff began the R.S.A.T. and A.R.T. programs with no other reasonable accommodations except his bi-lateral hearing aids.

52) During the first day of R.S.A.T. class plaintiff verbalized his need for the reasonable accommodations of Closed-Caption televison and preferred seating to Ms. Caroll, R.S.A.T. Instructor and Mr. Lewis Urban, R.S.A.T. Coordinator.

53) On or about June 25, 2005 after having been at "Wende" for seven (7) weeks plaintiff was transfered to the hearing impaired

Page 14

Unit on D-block 23 company.

54) On or about July 8, 2005 plaintiff filed an institutional grievance at "Wende" grieving defendant Andzel for failing to ensure plaintiff was afforded reasonable accommodations for general program purposes.

55) Plaintiff's administrative remedies were exhausted due to Central Office Review Committe's decision dated October 19, 2005 upholding the Superintendent's decison that in part stated " the video collection for R.S.A.T. and A.R.T. is in the process of being updated grievant should request written materials and or sit closer".

56) However plaintiff was unable to obtain the reccommended written materials because there wasn't any availible in the equivalent to the instruction video(s) being used.

57) According to New York State Department of Correctional Services directive 2612 " Inmates

Page 15

With Sensorial Disabilites" Wende Correctional Facility is a designated Facility For hearing impaired / deaf inmates.

58) Plaintiff alleges that "Wende" is ill equipped to accommodate the hard of hearing and or deaf inmate population.

59) On or about July 28, 2005 plaintiff met with defendant Andzel and Lewis Urban, R.S.A.T. Coordinator with regard to not being able to receive adequate accommodations For his disability.

60) The outcome of this meeting was the plaintiff signing out of the R.S.A.T. program.

61) On or about August 16, 2005 plaintiff underwent a new audiology examination.

62) As a result of this new examination plaintiff was Fitted For new hearing aids bi-laterally. It was Further determined by Mr. Gulp, the audiologist at "Wende" that plaintiff's hearing

Page 16

had become worse.

63) On or about August 27, 2005 plaintiff was housed in the Mental Health Unit - Observation Cell, where he remained until September 8, 2005. With no hearing aids.

64) On or about September 8, 2005 plaintiff was transfered from the custody of the New York State Department of Correctional Services and transfered to the custody of the New York State Office of Mental Health at Central New York Psychiatric Center.

65) Upon his arrival plaintiff was interviewed by Regina Miles, md assistant psychiatrist at C. N. Y. P. C.

66) During this interview in the presence of William Devies a Security Hospital Treatment Assistant (hereinafter "S.H.T.A.") plaintiff told defendant Miles that he was bi-laterally hearing impaired and needed his hearing aids.

Page 17

67) On or about September 9, 2005 "S.H.T.A." Steve Capolla brought plaintiff to a meeting with the treatment team.

68) Present was Robert Carr, Jim Burton, Pat Parotte, Chris Fullen, and Dr. E. Debroize.

69) Defendant Carr as plaintiff's assigned primary therapist spoke with plaintiff about the reasons for being at "C.N.Y.P.C." and any medical problems that may need to be addressed.

70) Plaintiff explained to Defendant Robert Carr and the other members of the treatment team that he was bi-laterally hearing impaired and would need reasonable accommodations to participate in treatment and therapeutic programs.

71) Based upon information and belief, "C.N.Y.P.C." did not have during the time relevant herein any staff member who was charged with the responsibility of evaluating requests for reasonable accommodations and or making a determination of accommodations needed.

Page 18

72) On or about September 19, 2005 spoke with defendant Robert Carr and once again requested assistance in obtaining his hearing aids and reasonable accommodations.

73) Defendant Robert Carr told plaintiff that "C.N.Y.P.C." is not responsible to accommodate him and that he would have to wait until he returned to the custody of the New York State Department of Correctional Services.

74) On or about September 19, 2005 plaintiff wrote a letter to Mr. Robert Raymond acting American's with Disabilities Act coordinator with the Department of Correctional Services.

75) In his letter plaintiff requested assistance from the Department of Correctional Services in obtaining his hearing aids from "Wende" and that the aids be forwarded to defendant Carr at "C.N.Y.P.C.

76) On or about September 20, 2005 plaintiff wrote to defendant Ann Andzel to request her

Page 19

assistance his hearing aids.

77) On or about September 20, 2005 plaintiff spoke with defendant Regina Miles about obtaining his hearing aids and accommodations.

78) Plaintiff told defendant Miles that he was having difficulties hearing.

79) Defendant Regina Miles advised plaintiff that he would not get his hearing aids while at "C.N.Y.P.C." or any reasonable accommodations. This was stated in the presence of "S.H.T.A" Tim Brown and Andrea Leah, Ward 201 Nurse.

80) On or about October 4, 2005 plaintiff was seen by defendant Cindy Law, Nurse Practioner.

81) Defendant Law examined plaintiff and checked his ears using a tuning fork. She advised plaintiff that she would speak with plaintiff's primary therapist Robert Carr about getting his hearing aids.

82) On or about October 12, 2005 plaintiff spoke to Andrea Leah, Ward nurse and requested to

Page 20

See Cindy Law because plaintiff was
experiencing sharp pains in his rectal area.

77) Plaintiff signed up five more days before
he was seen by defendant Cindy Law on or about
October 18, 2005.

78) Defendant Law determined that plaintiff's
pain was due to a large hemroid and prescribed
hydrocortazone cream.

79) On or about October 24, 2005 plaintiff
received a letter response from the Department
of Correctional Services answering plaintiff's
dated September 19, 2005 that requested assistance
in obtaining plaintiff's hearing aids. The
letter read in relevant part:
"I have been advised that your hearing aid molds
were taken in August 2005, and the actual hearing
aids have been located. Ms. Ann Andzel
Corrections Counselor, Manual Communications, has
advised me that Mr. Gullo, Audiologist, has them.
She will be contacting your primary therapist, Mr.
Robert Carr to arrange delivery to you."

80) A copy of the above letter was sent to Ms. Andzel
and Robert Carr.

Page 21

81) On or about November 2, 2005 plaintiff was given his two hearing aids by defendant Cindy Law, Nurse Practioner.

82) On or about November 2, 2005 plaintiff spoke with defendant Robert Carr.

83) Plaintiff requested to defendant Carr since the hospital was unable to accommadate plaintiff's disability, could Mr. Robert Carr contact the Deputy Superintendent for Security Services at "Wende" and attempt to obtain his phone amplifier from his property.

84) Plaintiff was told no.

85) On or about November 3, 2005 plaintiff spoke with Mr. Kevin Mahoney, Director of Rehabilative Services at "C.N.Y.P.C."

86) Plaintiff requested from Mr. Mahoney is at all possible could he be allowed to use closed-caption while watching videos in the Treatment Mall and for preferred seating.

87) Plaintiff was told that the resource video library contains many videos that are not

Page 22

Coded for Closed-Caption because they are twenty years old or older.

88) On or about November 4, 2005 plaintiff wrote a letter to the Director of Risk Management regarding the hospital's inability and refusal to provide Reasonable Accommodations in accordance with the American's With Disabilites Act of 1990.

89) Thus exhausting his administrative remedies for the denial of reasonable accommodations at C.N.Y.P.C.

90) On or about November 9, 2005 plaintiff received a copy of the Committment Order dated October 27, 2005 finding plaintiff to be mentally ill and to be committed to the custody of the Office of Mental Health for a period not to exceed six (6) months signed by a judge of Oneida County Supreme Court.

91) On or about November 10, 2005 plaintiff met with the Director of the Office of Risk Management concerning his allegations of discrimination and denial of reasonable accommodations.

Page 23

92). During the interview with defendant ~~Doe~~, Anthony Devito Director of Risk plaintiff informed him that "S.H.T.A." Chad Asch and John Dinardo were overheard by plaintiff and another patient making derogatory comments about the plaintiff's sexual orientation.

93) Plaintiff further told defendant ~~Doe~~ Anthony Devito of the numerous unsuccessful attempts he had in getting reasonable accommodations. Also the difficulty in getting medical ~~treatment~~ for hemroid removal.

94) On or about November 12, 2005 at approximately 6:50 p.m. in the dayroom on Ward 201 plaintiff witnessed "S.H.T.A." John Dinardo restrain another patient by grabbing the patient by his ankles, dragging him across the floor, swinging the patient and threw him against the wall.

95) Plaintiff confronted "S.H.T.A." John Dinardo and asked him was that really necessary.

96) While plaintiff was in a verbal altercation with defendant Dinardo, another "S.H.T.A." Frank Rios dived from a cushion chair and

Page 24

grabbed plaintiff in a tight choke hold and brought him down to the floor smashing his face. Plaintiff's left hearing aid come out of his ear.

97) Plaintiff was on the floor and "S.H.T.A." FRANK RIOS had his arm wrapped around the neck of the plaintiff, "SHTA" John Dinardo twisted plaintiff's arm up his back and dragged plaintiff out of the day room.

98) Plaintiff was brought to the side room where defendant John Dinardo threatened plaintiff by saying " what do you want to do now Faggot ? "

99) While in the side room where plaintiff was waiting, he had the rubber mold of his left hearing aid between his lips looking at the piece that came loose.

100) "S.H.T.A." John Dinardo snatched the hearing aid out of plaintiff's hand and forcefully twisted the right hearing aid out of plaintiff's right ear.

101) Defendant Dinardo told plaintiff " tell risk management that". Refering to an earlier

Page 25

Complaint made against defendant John Dinardo and Chad Asch.

102) On or about November 12, 2005 plaintiff wrote a letter of complaint to defendant ~~John~~ Anthony ~~Doe~~, Director Risk Management. DeVito, Associate

103) On or about November 14, 2005 plaintiff signed up to see Dr. Regina Miles, M.d and Robert Carr to inform them of the incident two days prior.

104) On or about November 14, 2005 plaintiff did see Ms. Cindy Law, Nurse Practioner and and advised her that his hearing aids were taken by John Dinardo.

105) Ms. Law as the medical specialist for plaintiff's ward was never informed by defendant Regina Miles, defendant Robert Carr, or any other member of the treatment team that plaintiff's hearing aids were taken.

106) On or about November 14, 2005 plaintiff wrote again to defendant ~~John Doe~~ Anthony DeVito, Director of Risk Management concerning the incident that occurred on November 12, 2005, alleging retaliatory treatment

Page 26

by "S.H.T.A." John Dinardo, and the refusal of defendant Regina Miles to return plaintiff's bi-lateral hearing aids.

107) With the November 14, 2005 letter to the Director of Risk Management plaintiff exhausted his administrative remedies.

108) On or about November 14, 2005 plaintiff wrote a letter of complaint to Mental Health Legal Service.

109) On or about November 15, 2005 plaintiff signed up to see defendant Regina Miles and defendant Robert Carr.

110) Plaintiff was not seen.

111) On or about November 15, 2005 at approximately 9:30 a.m., plaintiff spoke with defendant Cindy Law who told plaintiff that she inspected his hearing aids and 1) Found them to be working and 2) with no apparent damage.

112) On or about November 15, 2005 at approximately

Page 27

2:50 p.m. to 3:05 p.m. plaintiff was interviewed by defendant Cindy Law for a physical body check and to document what happened on November 12, 2005.

113) Plaintiff asked defendant Law why she was allowing his hearing aids to be withheld as a punishment?

114) On or about November 15, 2005 at approximately 4:00 p.m. plaintiff was interviewed by Mr. D. Abdul an investigator from the Office of Risk Management

115) Plaintiff re-stated his allegations to Mr. Abdul about S.H.T.A. John Dinardo, and Frank Rios. And concerning his hearing aids.

116) On or about November 16, 2005 plaintiff met with defendant Regina Miles, Md, defendant Robert Carr, Senior "S.H.T.A." Glen Block, and Chris Fullon, RN in the nurses station on Ward 201.

117) The conversation/meeting centered around

Page 28

the altercation between plaintiff and "S.H.T.A."
John Dinardo, and Frank Rios. As well as
the fact that Dr. Miles was not willing to
return plaintiff's hearing aids.

118) Plaintiff advised everyone present that
arbitrarly taking away his hearing aids
is illegal. That there is no legitamate
reason to withhold the hearing aids other
than the illegitamate one for punishment.

119) plaintiff also advised that the way
"S.H.T.A." John Dinardo and Frank Rios
abused plaintiff was done with
malicious intent.

120) On or about November 17, 2005 at
approximately 9:00 a.m. plaintiff met with
the full treatment team consisting of the
following members: Dr. Regina Miles, md ;
Robert Carr ; Jim Burton ; Glen Bilby ;
Dr. E. Debroize, Phd ; Cindy Law ;
Lynn Simone ; Kendra ; and Lucy RN.

121) At the team meeting plaintiff asked the team

Page 29

When he would be able to get his hearing aids back.

122) Jim Burton spoke for the treatment team saying that "S.H.T.A." John Dinardo reported to Patrick the ward nurse that I was chewing on my hearing aids, trying to break them.

123) Plaintiff responded by saying that "S.H.T.A." John Dinardo was retaliating against plaintiff for filing complaints against him to Risk Management and that if Patrick made that report he was relying on bad information.

124) Plaintiff also told the team about the prior comments made about plaintiff's sexual orientation by John Dinardo and Chad Asch.

125) On or about November 17, 2005 at approximately 2:00 pm plaintiff received his hearing aids from 201 Ward Unit Manager Jim Burton.

126) On or about November 18, 2005 plaintiff had an interview with a representative of

Page 30

Mental Health Legal Service and the attorney.

127) During the interview plaintiff told the Staff From Mental Health Legal Services of the difficulties he has had trying to obtain reasonable accommodations such as close caption television, preferred seating and telephone amplifier.

128) Plaintiff also informed Mental Health Legal Services about the excessive use of force by "S.H.T.A." John Dinardo and "S.H.T.A." Frank Rios. And that eventhough plaintiff was Waring his hearing aids that were unlawfully held From him for Five and a half days.

129) On or about November 18, 2005 at approximately 5:00 p.m. plaintiff was informed by Senior "S.H.T.A." Keith Richardson that Patrick the Ward Nurse Wanted to speak with him.

130) On the way out of the dining room Senior "S.H.T.A." Richardson asked plaintiff to go to the first side room.

131) Nurse Patrick came in to speak with the

Page 31

plaintiff and ask the plaintiff about statements made to Dr. Regina Miles, md and to Risk Management.

132) Nurse Patrick was the ward nurse on duty on Saturday November 12, 2005 for the 3:00 pm to 11:00 pm shift. And was present during the entire incident with "S.H.T.A." John Dinardo and Frank Rios.

133) In the presence of Senior "S.H.T.A." Keith Richardson and "S.H.T.A." William D. Nurse Patrick threatened plaintiff by saying "you better recant your story and straighten things out Dr. Miles or when I come back to work Tuesday I will make it my life's work to insure you never get your hearing aids again."

134) Plaintiff then returned to the day room and requested to speak with the Nursing Supervisor on duty.

135) Nurse Administrator Cindy Comstock came to speak with the plaintiff about this

Page 32

incident

136) On or about November 28th, 2005
plaintiff signed up to see defendant
Regina Miles, and Robert Carr.

137) Plaintiff also signed up to see
defendant Cindy Law because plaintiff's
hearing aid batteries needs to be replaced.

138) None of the above defendant's
came to speak with plaintiff about the incident
on 11/18/05.

139) Plaintiff did speak with Jim Barton
Unit Manager and relayed the information
about the threat made by Nurse Patrick.

140) On or about November 28th, 2005 plaintiff
Sent a letter of complaint to Director of Risk
Management regarding the statements and
threats made by Nurse Patrick.

141) On or about November 28th, 2005 plaintiff
filed a letter of complaint with Mental Health Legal

Page 33

Services regarding the comments and threats of Nurse Patrick.

142) Plaintiff asked "S.H.T.A." James Vaneau to contact defendant Cindy Law and alert her to the fact that plaintiff needed batteries for his hearing aids.

143) On or about November 21st, 2005 defendant Regina Miles increased plaintiff's Lithium dosage by 300 mg. Thus plaintiff now takes 1800 mg of Lithium, 40 mg of Prozac and 50 mg of Trazadone.

144) Defendant Regina Miles never even informed or relayed the message that she was increasing his medication.

145) Plaintiff suffers from a mental disease but does not lack the mental capacity to participate in the planning of his course of treatment.

146) Plaintiff as a patient has a right to be notified or changes in his treatment.

Page 34                                              05 cv 1459

147) On or about November 22, 2005 plaintiff signed up to see defendant Regina Miles, Robert Carr and Cindy Law.

148) Plaintiff was never seen.

149) On or about November 22, 2005 plaintiff requested from Senior "S.H.T.A." Michael Chapman for the close caption be turned on for the day room television so plaintiff could watch television with the rest of the patients.

150) Senior "S.H.T.A." Michael Chapman that he was not aware of any order written by the medical doctor or psychiatrist given permission for plaintiff to request close-caption.

151) It is obvious that plaintiff is bi-laterally hearing impaired because of the hearing aids he wears.

Page 35

152) On or about November 23, 2005 at approximately 9:50 a.m. plaintiff met with Mr. Dick Abdul from the office of Risk Management.

153) Plaintiff related the incident between him and Nurse Patrick on 11-18-05

154) Plaintiff as of this date still had no batteries for his hearing aids.

## CAUSES OF ACTION

I   Plaintiff alleges that all defendants herein denied him reasonable accommodations for a qualified disability

II  Plaintiff alleges discrimination as to defendant(s) Miles, Carr, Law and Dinardo.

III Plaintiff alleges retalitory treatment against defendant(s) Dinardo and Patrick;

IV  Plaintiff alleges that all aforementioned

Page 36

defendants denied plaintiff his constitutional rights as guaranteed under the Equal Protection Clause;

V   Plaintiff alleges that defendant's Miles, Carr, Law, Office of Mental Health, and Dinardo denied plaintiff adequate medical care when the unlawfully withheld plaintiff's hearing aids for five and a half days;

VI   Plaintiff alleges that defendant's violated his rights as protected under Title II of the American's With Disabilities Act.

## PRAYER FOR RELIEF

Judgment for declatory relief declaring plaintiff's statutory and constitutional rights were violated by defendants;

Judgement for compensatory damages in each Cause of action against each aforementioned defendant in the amount of NINE THOUSAND NINE HUNDRED AND NINETY NINE ($9,999) DOLLARS;

Judgement for punitive damages in each cause of action individually against each aforementioned defendants in the amount of NINE THOUSAND NINE HUNDRED AND NINETY NINE ($9,999) DOLLARS;

Judgement for substantial damages in each cause of action individually against each aforementioned defendants in the amount of NINE THOUSAND NINE HUNDRED AND NINETY NINE ($9,999) DOLLARS;

Judgement for permanent injunctive relief Ordering the New York State Office of Mental Health at C.N.Y.P.C. to comply with the accommodation provisions of the American With Disabilites Act, to provide disabled patients/prisoner's with a liasion to assist with the needs of disabled patients/prisoner.

I, plaintiff Matthew John Matagrano, duly affirms and says under the penalty of perjury that the foregoing facts are true and correct to the best of his knowledge, except for those things said based on information and belief and to those things plaintiff believes them to be true. All grievances and administrative remedies have been exhausted. (28 U.S.C. § 1746)

Dated: December 1, 2005        Respectfully Submitted
       Marcy, N.Y.

       Matthew John Matagrano
       # 04-A-5853