UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK     x

MATTHEW JOHN MATAGRANO,

                    Plaintiff

                                           SECOND

     – vs –                   AMENDED COMPLAINT

  OFFICE OF MENTAL HEALTH; NEW YORK     CIV NO. 05 CV 1459 (DNH)(RFT)

STATE DEPARTMENT OF CORRECTIONAL         TRIAL BY JURY
                                             DEMANDED

SERVICES; DR. REGINA MILES, MD; ROBERT

CARR; ANN ANDZEL; CHRISTINE; ANTHONY       PRO-SE

DEVITO; JOHN DINARDO; PATRICK; CINDY

LAW; ROBERT A. KIRKPATRICK; DR.

CHRISTOPHER M. DEKIN, MD; DAVID

PRIVETT; and ROBERT RAYMOND,

                    Defendants.  x

      PLEASE TAKE NOTICE that, this is the pro-se plaintiff's second amended complaint. The First having been filed in this Court on or about December 2, 2005 and docketed as such by Order OF this Court on April 21, 2006.

### PRELIMINARY STATEMENT

      This is a civil rights action filed by the plaintiff, a mentally ill and physically disabled prisoner for damages, injunctive and declaratory relief Under 42 U.S.C. Sect. 12101, et. Seq as amended; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; and 42 U.S.C. Section

SECOND AMENDED COMPLAENT
05 cv 1459 (DNH) (RFT)
-2-

1983, alleging discrimination based on a physical and
mental disability; retaliation for engaging in Constitutionally
protected conduct; denial of reasonable accommodations
for a bi-lateral hearing impairment; denial of adequate
medical Care; deliberate indifference to a serious medical
needs; denial of substantive and procedural due process of
law; for denial of equal protection under the law;
failure to protect; willful, casual, and unjustified
violation of right to medical privacy and confidentality.
Plaintiff further alleges as follows:

## JURISDICTION AND VENUE

1) This is a civil rights action seeking relief and
damages to defend and protect the rights guaranteed
by the Constitution of the United States. This action
is brought pursuant to 42 U.S.C. Section 12101, et. seq; Section 504
of the Rehabiliation Act, 29 U.S.C. Section 794; and 42
U.S.C. Section 1983.

2) The Court has federal question jurisdiction over this
action pursuant to 28 U.S.C. Section 1331, 1343 (a)(1)(2)(3) and
2201. The Court further has pendent jurisdiction of state law
claims herein pursuant to 29 U.S.C. Section 1367 (a).

3) Venue is proper in this Court pursuant to 28 U.S.C. Section
1391 (b)(2) due to the majority of the events giving rise to the causes
of action occurred at the Central N.Y. Psychiatric Center in the

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH) (RFT)
-3-

County of Oneida, in the State of New York, and plaintiff at the commencement of this action resided in the territorial boundaries of this Court.

## PARTIES TO THE ACTION

4) Plaintiff Matthew John Matagrano, is and was at all times relevant herein a prisoner in the custody of New York State Department of Correctional Services (hereinafter "DOCS") and or a mentally ill prisoner in the custody of New York State Office of Mental Health, (hereinafter "OMH") who is confined at the WENDE CORRECTIONAL FACILITY 3040 WENDE RD PO BOX 1187, ALDEN, NY 14004

5) Defendant New York State Office of Mental Health, was and is at all times relevant herein the custodial agency charged with the mental health care of prisoners on an outpatient basis in the New York State "DOCS" at various mental health satellite units and further charged with the custodial care of prisoners' determined to be mentally ill by judicial order and involuntarily committed to the Central New York Psychiatric Center (hereinafter "CNYPC") and has it's principal place of business at: 44 Holland Avenue, Albany, N.Y. 12226°

6) Defendant New York State Department of Correctional Services, "DOCS" was and is at all times relevant herein the custodial agency charged by statute with the care, custody, and control of convicted felons in the State of New York, and has it's principal place of business at: Harriman State Office Campus, Building No. 2 1220 Washington Avenue, Albany N.Y. 12226-2050.

SECOND AMENDED COMPLAINT
05-CV-1459 (DAB) (RFT)
-4-

7) Defendant <u>Regina Miles</u>, MD was at all times relevant herein employed as an Assistant Psychiatrist for the New York State "OMH" at the C.N.Y.P.C. located at P.O. BOX 300 OLD RIVER RD. MARCY, N.Y. 13403-0300 and was assigned as plaintiff's psychiatrist.

8) Defendant <u>Robert Carr</u>, was at all times relevant herein employed as a Social Worker for the New York State "OMH" at C.N.Y.P.C. located at P.O. BOX 300 OLD RIVER ROAD, MARCY, N.Y. 13403-0300 and was assigned as plaintiff's primary therapist.

9) Defendant <u>Ann Andzel</u>, was at all times relevant herein employed as an Corrections Counselor of the Sensorial Disabilites Unit for the New York State Department of Correctional Services at the Wende Correctional Facility located at 3040 Wende Rd. P.O. BOX 1187 ALDEN, N.Y. 14004-1187. Defendant Andzel was plaintiff's assigned Sensorial Disability counselor at the Wende Correctional Facility.

10) Defendant <u>Ms. Christine</u>_____, was at all times relevant herein employed as a Social Worker for the New York State "OMH" at the Elmira Correctional Facility Satellite Mental Health Unit located at: P.O. BOX 500 Elmira, N.Y. 14902-0500.

11) Defendant <u>Anthony Devito</u>, was at all times relevant herein employed as the Associate Director of Quality Management for the New York State "OMH" at CNYPC located at P.O. BOX 300 OLD RIVER ROAD MARCY, N.Y. 13403-0300.

12) Defendant <u>John Dinardo</u>, was at all times relevant herein employed as a Security Hospital Treatment Assistant (hereinafter SHTA) for the New York State "OMH" at the CNYPC located at P.O. BOX 300 OLD RIVER ROAD, MARCY N.Y. 13403-0300.

13) Defendant <u>Patrick</u>_____, was at all times relevant herein employed as a psychiatric nurse for the New York State "OMH" at CNYPC located at: P.O. BOX

SECOND AMENDED COMPLAINT
05-cv-1459 (DAH) (RFT)
- 5 -

300 OLD RIVER RD. MARCY, N.Y. 13403-0300.

14) Defendant Cindy Law, was at all times relevant herein employed as a Nurse Practioner for the New York State "OMH" at CNYPC located at: P.O. Box 300 OLD RIVER ROAD, MARCY, N.Y. 13403-0300.

15) Defendant Robert A. Kirkpatrick, was at all times herein the duly appointed qualified employed as the Superintendent of Wende Correctional Facility, charged with the care, custody, and control of prisoners' assigned to said facility, had review powers under the Inmate Grievance Program, and has supervisory duties of all employees at the Wende Correctional Facility, located at: 3040 Wende Rd. P.O.Box 1187 ALDEN, N.Y. 14004-1187.

16) Defendant Christopher M. Dekin, MD, was at all times herein employed as a Psychiatrist for the New York State "OMH" at the C.N.Y.P.C. assigned to the Mental Health Satellite Unit at Wende Correctional Facility whose principal place of business at: 3040 Wende Rd P.O. Box 1187 ALDEN, N.Y. 14004-1187. Defendant Dekin was assigned as plaintiff's psychiatrist at Wende

17) Defendant David Privett, was at all times herein employed as Chief of Mental Health Satellite Unit of Wende Correctional Facility for the New York State "OMH" at CNYPC whose principal place of business is at: 3040 Wende Rd. P.O. Box 1187 Alden, N.Y. 14004-1187.

18) Defendant's all sved in their individual personal and official capacity.

19) Defendant Robert Raymond, ADA Coordinator, NYS "DOCS". 1220 Washington Ave. Albany, NY 12226

BACKGROUND:

20) On or about November 9, 2004 plaintiff was received at the Downstate Correctional - Reception Center from the New York City Department of Corrections.

SECOND AMENDED COMPLAINT
05 CV 1459 (DNH) (RFT)
~ 6 ~

21) Plaintiff was housed in a Mental Observation Unit while a pre-trial detainee.

22) On or about December 2, 2004, plaintiff was transfered to the Eastern New York Correctional Facility Sensorial Disabilities Unit (hereinafter "ENYCF" and "SDU") for extended program assessment.

## STATEMENT OF FACTS

23) While at "ENYCF" plaintiff was assessed and it was determined that his medical classification be HL2O, entitling him to the reasonable accommodations of hearing aids\ batteries; Telephone Amplification; Preferred Seating; and Closed-Caption Television ["CCTV"].

24) Plaintiff is a qualified individual with a disability because of his mental illness and bi-lateral hearing impairment.

25) On or about March 9, 2005 plaintiff went to emergency sick call to request to be seen by Mr. Rutter, plaintiff's assigned social worker from "OMH" at ENYCF Mental Health Unit (hereinafter "MHU").

26) That morning plaintiff was interviewed by Mr. Rutter and subsequently assigned to the Special Housing Unit (hereinafter "SHU") for a period of twenty four hour suicide observation.

27) On or about March 10, 2005 plaintiff was returned to the general population despite his expression of feelings of severe depression.

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH) (RFT)
- 7 -

28) On or about March 28, 2005, at approximately 11:30 p.m. plaintiff broke his shaving razor to extract the razor blade, and self mutilated both his left and right forearms and wrists.

29) On or about March 29, 2005 at approximately 9:00 a.m. plaintiff was found in his cell bleeding and brought to the Health Services Unit.

30) At approximately 4:00 pm plaintiff was transferred to the Mental Health Satellite Unit at the Elmira Correctional Facility (hereinafter ELMIRA) for a ten day psychiatric evaluation.

31) On or about March 30, 2005 plaintiff spoke with a psychiatrist (Dr. Young) via video conference from the "ELMIRA" "MHU". Ms. Christine was present in the room.

32) Ms. Christine was plaintiff's primary therapist for the time plaintiff was being evaluated at "ELMIRA" "MHU".

33) Plaintiff informed Ms. Christine that he was bi-laterally hearing impaired, and that he did not have his hearing aids, which were at "ENYCF."

34) Ms. Christine advised plaintiff that he would not be at ELMIRA for approximately 14 days and that since "ENYCF" is plaintiff's owning facility there wasn't anything she could do about his hearing aids.

35) Plaintiff was experiencing difficulties hearing.

36) On or about April 4, 2005, plaintiff wrote

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH)(RFT)
- 8 -

to the American's with Disability Act Coordinator (hereinafter "ADA COORD.") for DOCS requesting a special needs transfer to a facility that can accommodate the hard of hearing/deaf.

37) On or about April 13, 2005 plaintiff was discharged from ELMIRA MHU and assigned to the general population of "ELMIRA."

38) Plaintiff was housed around other prisoners whom were not mentally ill, or hearing impaired.

39) The correctional staff were unable to work with the plaintiff because based upon information and belief they were not trained in dealing with prisoners' who are sensorially disabled.

40) Plaintiff based upon information and belief was never considered for evaluation and treatment at "CNYPC" despite the recent episode of self mutilation, and his extensive psychiatric history involving over eleven in-patient committments to psychiatric facilities.

41) On or about May 2, 2005 plaintiff was transfered to the Wende Correctional Facility (hereinafter "WENDE").

42) Plaintiff was assigned to the general population and housed in A-6-11, without his hearing aids or any other reasonable accommodations.

43) Based upon information and belief defendant Ann Andzel from the SDU at "WENDE" was informed of plaintiff's arrival of MS. Ann Lott, Correction Counselor.

44. On or about May 9, 2005 plaintiff sent a written request to MS. Helen Dean, Deputy Superintendent of Programs, and defendant Ann Andzel, Corrections Counselor Manual Communications for reasonable accommodations for general programming.

SECOND AMENDED COMPLAINT
   05 CV 1459 (DNH) (RFT)
      -9-

45) On or about May 9, 2005 plaintiff began to attend a mandatory facility orientation class.

46) Plaintiff did not have his hearing aids nor was he provided any reasonable accommodations.

47) On or about May 15, 2005 plaintiff received his property from ENYCF, including his bi-lateral hearing aids.

48) On or about June 3, 2005 plaintiff had his intial interview with Dr. Shane Hutton, Phd, his assigned "MHU" counselor.

49) Plaintiff had already been at "WENDE" for approximately thirty-days without seeing any "OMH" employee prior to June 3, 2005.

50) On or about June 15, 2005, plaintiff again in writing to defendant Ann Andzel requested reasonable accommodations, specifically for the program(s) of Residential Substance Abuse Treatment (hereinafter "RSAT") and Aggression Replacement Training (hereinafter "ART") which would begin on June 20, 2005.

51) No response was received.

52) On or about June 20, 2005, plaintiff began the RSAT and ART programs.

53) Plaintiff had no other reasonable accommodation than his hearing aids.

54) Both "ART" and "RSAT" utilize video cassettes as an instruction tool, and plaintiff requested "CCTV" so that he would be able to adequately participate.

SECOND AMENDED COMPLAINT
05-CV-1459
-10-

55) On or about June 20, 2005 plaintiff informed Ms. Caroll, "RSAT" instructor and Mr. Lewis Urban, "RSAT" Coordinator that he was hearing impaired and would need the reasonable accommodations of "CCTV" and preferred seating.

56) On or about June 25, 2005, plaintiff was re-assigned to the "SDU" at "WENDE" after having been assigned for seven weeks to the general population.

57) On or about July 8, 2005 plaintiff submitted an institutional grievance with the Inmate Grievance Resolution Committee ("IGRC") for the failing to be accommodated in "RSAT" and "ART" by defendant Andzel.

58) A decision with regard to this grievance was received from the Central Office Review Committee (hereinafter "CORC") dated October 19, 2005 upholding the Superintendent's response that advised plaintiff that the video collection for "RSAT" and "ART" is in the process of being updated, and that he should request written materials and sit closer.

59) Based upon information and belief "RSAT" had no written materials that related to the video cassette instruction.

60) On or about July 28, 2005 a meeting was held with Ms. G. Divers, "RSAT" Instructor, Mr. Lewis Urban "RSAT" coordinator and defendant Ann Andzel.

61) At this meeting plaintiff again stated that he

SECOND AMENDED COMPLAINT
05 CV 1459 (DNH) (RFT)
—11—

Was not adequately able to hear the instructions in RSAT
and again requested reasonable accommodations.

62) As a result of the inability to receive adequate
reasonable accommodations plaintiff officially withdrew from
the "RSAT" program.

63) On or about August 10, 2005 plaintiff was
attacked by another prisoner who through urine and bleach
on the plaintiff while he was in his cell (D/23-06).

64) Plaintiff began yelling for help and became
self abusive by cutting his wrists with his shaving razor.

65) At approximately 11:00 a.m. plaintiff was brought
to "MHU" where he was interviewed by Dr. Christopher Dekin,
MD and Dr. Shane Hutton, PhD.

66) Plaintiff informed defendant Dekin that he was
attacked and wanted to be placed into protective custody
housing.

67) Plaintiff was assigned to the "MHU" Observation
Cell area. (MH-OB-06)

68) On or about August 11, 2005 during clinical team
rounds, plaintiff renewed his request for protective
Custody to defendant Dekin and defendant David
Privett.

69) On or about August 12, 2005 plaintiff was
discharged from "MHU" and assigned again to the same
Cell block, Company, and cell where he was attacked. (D/23-06)

70) Based upon information and belief, plaintiff's

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH) (RFT)
—12—

request for protective custody was never relayed to "DOCS."

71) On or about August 16, 2005 plaintiff was examined by the audiologist at "WENDE."

72) It was determined that plaintiff's hearing loss had increased, and he was fitted for new hearing aids.

73) On or about August 27, 2005, plaintiff was assigned to the MHU Observation cell.

74) Plaintiff was not allowed hearing aids.

75) On or about September 8, 2005 plaintiff was discharged from "DOCS" and committed to the "OMH" at "CNYPC."

76) Upon his arrival at CNYPC plaintiff was interviewed by Regina Miles, MD Assistant Psychiatrist.

77) During this interview in the presence of William Devries, a "SHTA," plaintiff told defendant Miles that he was bi-laterally hearing impaired and needed his hearing aids.

78) On or about September 9, 2005 at approximately 9:00 a.m., "SHTA" Steve Capolla brought plaintiff to the treatment team meeting on Ward 202.

79) Defendant Carr as plaintiff's assigned primary therapist spoke with plaintiff about the reasons for being at "CNYPC" and any medical problems that needed to be addressed.

80) Plaintiff explained to defendant Robert Carr and the other members of the treatment team that he was bi-laterally hearing impaired and would need reasonable accommodations to participate in treatment and thereputic programs.

81) Based upon information and belief, "CNYPC" did not have

SECOND AMENDED COMPLAINT
05-CV-1459
— 13 —

a responsible employee during any time relevant herein charged with the responsibility of evaluating requests for reasonable accommodations and or making a determination of the accommodations needed.

82) On or about September 18, 2005 plaintiff verbally requested to defendant Carr his assistance in obtaining his hearing aids from "DOCS" at "WENDE" and telephone amplifier, "CCTV."

83) Defendant Carr advised plaintiff that "CNYPC" is not responsible to accommodate him and that he would have to wait until he returned to "DOCS".

84) On or about September 19, 2005 plaintiff wrote a letter to Robert Raymond, "ADA COORD." for "DOCS" requesting his help in obtaining his hearing aids from "WENDE."

85) On or about September 20, 2005 plaintiff wrote to defendant Anzel at WENDE to ask her help in obtaining plaintiff's aids.

86) On or about September 20, 2005 plaintiff verbally informed defendant Regina Miles that he was having difficulties hearing and that he needed his hearing aids as well as other accommodations.

87) In the presence of "SHTA" Tim Brown, and Nurse Andrea Leah, defendant Miles informed plaintiff that he would not be getting his hearing aids or any other accommodations at "CNYPC."

88) On or about October 4, 2005 plaintiff was examined by Ms. Cindy Law, Nurse Practioner at the "CNYPC."

89) Defendant Law used a tuning fork to check plaintiff's hearing, and told him that she would speak with his primary therapist about obtaining his hearing aids.

90) On or about October 12, 2005 plaintiff requested to

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH) (RFT)
-14-

Nurse Andrea Leah to see defendant Cindy Law because plaintiff
was bleeding from and experiencing sharp pains in his rectal area.

91) On or about October 18, 2005 plaintiff in the presence
of Senior "SHTA" Glen Block, was examined by defendant Cindy
Law.

92) Plaintiff had been complaining for five consecutive days of
severe pain in his rectal area.

93) It was determined that plaintiff's pain was due to
large inflamed hemroids and that he would be scheduled for a
surgery consult.

94) On or about October 24, 2005 plaintiff received a
letter in response to his letter to defendant Robert Raymond,
informing plaintiff that his hearing aids had been located and that
Ms. Ann Andzel would be forwarding them to Mr. Robert Carr at
the "CNYPC."

95) On or about November 2, 2005 in the presence of
Chris Fullem, Ward Nurse, defendant Cindy Law issued
plaintiff his bi-lateral hearing aids.

96) On or about November 2, 2005 plaintiff requested
to defendant Carr for him to contact WENDE to request that plaintiff's
telephone amplifier be forwarded to "CNYPC," since "CNYPC" didn't
have one.

97) Defendant Carr told plaintiff no.

98) On or about November 3, 2005, plaintiff requested
to Mr. Kevin Mahaney, Director of Rehabilitative Services at the
"CNYPC" to have "CCTV" for the Treatment Mall sessions that was

SECOND AMENDED COMPLAINT
05- CV- 1459
    -15-

mandatory for plaintiff to attend.

99) Plaintiff was told that the resource video library at the CNYPC contained selections that were twenty years old and are not coded for "CCTV" use.

100) On or about November 4, 2005, plaintiff wrote a letter of complaint to Mr. Anthony Devito, Associate Director Quality Management at the "CNYPC", complaining of not being able to receive reasonable accommodations and poor medical care by defendant Cindy Law.

101) On or about October 27, 2005 plaintiff was found to be mentally ill requiring in patient treatment at the "CNYPC" by a Judge of the Oneida County Supreme Court.

102) On or about November 10, 2005 plaintiff was interviewed by defendant Anthony Devito concerning plaintiff's complaint letter stating that he has not been given reasonable accommodations and that Cindy Law is ignoring plaintiff's rectal pain.

103) Plaintiff also informed defendant Anthony Devito that "SHTA" Chad Asch and John Dinardo were overheard by plaintiff and another patient making derogatory comments about plaintiff's sexual orientation.

104) On or about November 12, 2005 at approximately 7:00 p.m. plaintiff had a verbal altercation with defendant John Dinardo after witnessing Dinardo physically abuse another patient.

105) While engaged in this verbal altercation, "SHTA" Frank Rios dived from a cushion chair and jumped on the back of the plaintiff, placing him in a tight choke hold and brought plaintiff down to the floor smashing his face.

106) While plaintiff was on the floor, Frank Rios had his arm

SECOND AMENDED COMPLAINT
05-CV- 1459 (DNH) (RFT)
~16~

Wrapped around plaintiff's neck, defendant Dinardo twisted plaintiff's right arm up his back and dragged him out of the day room.

107) Plaintiff was brought to the side room where defendant Dinardo threatened plaintiff by saying "what do you want to do now faggot?"

108) Plaintiff had the rubber mold of his left hearing aid between his lips looking at the piece that came loose when Frank Rios jumped on him, defendant Dinardo snatched the hearing aid out of plaintiff's hand then twisted forcefully the right aid out of plaintiff's ear. Dinardo told plaintiff "tell Risk management that."

109) Based upon information and belief defendant Dinardo was making reference to a complaint plaintiff made to Anthony Devito.

110) On or about November 12, 2005, plaintiff wrote a letter of complaint against "SHTA" Frank Rios and defendant Dinardo and sent to defendant Anthony Devito, Associate Director Quality Management.

111) On or about November 14, 2005, plaintiff signed up to see defendant Miles, and Carr to inform them about the incident on November 12th.

112) On or about November 14, 2005 plaintiff told defendant Law that his hearing aids had been taken by defendant Dinardo.

113) Based upon information and belief defendant Cindy Law was never informed by treatment staff that plaintiff's aids had been taken away.

114) Plaintiff submitted another letter to defendant Devito alleging that defendant Dinardo retaliated against plaintiff for his earlier complaint, and to ask defendant Devito's assistance in having defendant Miles return his aids, because she refused to do so.

115) On or about November 15, 2005 plaintiff signed up

SECOND AMENDED COMPLAINT
05-cv-1459 (DNH) (GFT)
-17-

to see defendant Miles and Carr.

116) Plaintiff was not seen.

117) On or about November 15, 2005 at approximately 9:30 a.m, plaintiff spoke with defendant Law who told plaintiff that she inspected his hearing aids and found them to be working and with no apparent damage.

118) At approximately 2:50 p.m. plaintiff was interviewed by defendant Law and Nurse Chris Fullem for a physical body check and to document the incident on November 12, 2005.

119) At approximately 4:00 p.m. plaintiff was interviewed by Mr. Abdau an investigator from Risk Management.

120) Plaintiff restated the allegations about defendant Dinardo, provided names of other staff and patients who were present on November 12, 2005, and asked about getting his hearing aids back.

121) On or about November 16, 2005 plaintiff was interviewed by defendant Miles, Carr, Senior "SHTA" Glen Block, Senior Occupational Therapist Nora Lacomb and Ward Nurse Chris Fullem, RN.

122) The interview concerned the incident on November 12, 2005 with defendant Dinardo and plaintiff's hearing aids.

123) Defendant Miles told the plaintiff that she would not be returning plaintiff's aids.

124) Plaintiff stated that the arbitrarily taking away of his aids was illegal. That there exists no legitamate reason to withhold the hearing aids, and by refusing to return them, plaintiff was being punished by defendant Miles.

Second Amended Complaint
05-cv-1459 (DNH) (RFT)
   -18-

125) On or about November 17, 2005 at approximately 9:00 a.m., plaintiff was interviewed by defendant Miles, Carr, Mr. Jim Burton, Senior "SHTA" Glen Bilby, Dr. E. Debroize, Phd, defendant Law, Occupational Therapist Lynn Simone, and Ward Nurse Lucy.

126) During the interview plaintiff requested to have his aids returned.

127) Mr. Burton, unit manager told plaintiff that defendant Dinardo reported to Ward Nurse Patrick on November 12, 2005 that plaintiff was chewing on his hearing aids trying to destroy them.

128) Plaintiff told all present that defendant Dinardo was retaliating against plaintiff for filing a complaint against him and that if Nurse Patrick made that report he was relying on bad information.

129) At approximately 2:00 p.m. Mr. Burton returned the hearing aids to plaintiff.

130) On or about November 18, 2005 at approximately 5:00 p.m. plaintiff was told by Senior "SHTA" Keith Richardson that Patrick the Ward Nurse wanted to speak with him.

131) Plaintiff was brought to the side room by Senior SHTA Richardson.

132) Nurse Patrick came in accompanied by "SHTA" Bill D. and asked plaintiff about his statements made to Dr. Miles and Risk Management.

133) Based upon information and belief Patrick was the assigned evening ward nurse on November 12, 2005.

134) Nurse Patrick threatened plaintiff by saying "you better recant your story and straighten things out with Dr. Miles or

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH) (RFT)
—19—

When I come back to work Tuesday, I will make it my life's work
to insure you never get your hearing aids again."

135) Plaintiff felt threatened because he was required to
turn in to the nurses station his hearing aids.

136) Plaintiff returned to the day room and asked Senior
SHTA Richardson if plaintiff could speak with the Nurse Administrator
on duty.

137) At approximately 7:00 p.m. Nurse Administrator
Cindy Comstock came to interview the plaintiff.

138) On or about November 21, 2005 plaintiff signed
up to see defendant Miles, Carr and Law.

139) Plaintiff also requested to have his hearing batteries
replaced.

140) Plaintiff was not seen.

141) Plaintiff did see Mr. Barton, Unit Manager and told
him about what Nurse Patrick said.

142) Plaintiff wrote a letter of complaint to Anthony Devito
about being threatened by Nurse Patrick.

143) At approximately 8:30 p.m. plaintiff was informed
during medication pass that defendant Miles increased the
lithium dosage by 300 mg. Plaintiff was now being prescribed
1800 mg of lithium, 40 mg of Prozac and 50 mg of Trazadone.

144) Defendant Miles never told or relayed to the plaintiff
that his medication was going to be increased.

145) Plaintiff refused his medication.

146) Plaintiff has a right to be told about changes in his treatment.

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH) (RFT)
- 20 -

147) On or about November 22, 2005, plaintiff signed up to see defendants' Regina Miles, Robert Carr and Cindy Law, and Jim Burton.

148) Plaintiff was still not seen.

149) On or about November 22, 2005, plaintiff asked Senior SHTA Michael Chapman on Ward 201 if the close caption could be turned on for the day room television so plaintiff could watch television movies with the other patients.

150) Senior SHTA Chapman told plaintiff that he was not aware of any order from the medical doctor or psychiatrist given written permission for plaintiff request close caption.

151) On or about November 23, 2005 at approximately 9:50 a.m. plaintiff was interviewed by Mr. Dick Abdau, an investigator from Risk Management.

152) Plaintiff restated the threat made by Nurse Patrick on November 18, 2005.

153) As of November 23, 2005 plaintiff still had not received replacement hearing aid batteries.

154) Plaintiff for the third consecutive day requested to be seen by defendant Miles, Carr, Law and Mr. Jim Burton.

155) Plaintiff was not seen.

156) On or about November 23, 2005 a letter of complaint asserting discrimination, harassment, denial of reasonable accommodations and that plaintiff's hearing aids were unlawfully withheld for five days, was mailed to the U.S. Department of Health and Human Services - Office of Civil Rights by the plaintiff.

154) On or about November 27, 2005 plaintiff received replacement batteries.

SECOND AMENDED COMPLAINT
05-cv-1459 (DNH)(RFT)
- 21 -

158) On or about November 30, 2005 defendant Miles discharged plaintiff to "DOCS" to be returned to "WENDE" despite the fact that plaintiff was non-compliant with medication.

159) Plaintiff while in transport by "DOCS" to "WENDE" started becoming self-abusive by banging his head against the metal grate covering the van window, trying to choke himself by tying the seatbelt strap around his neck and breaking off a piece of plastic on the back of the van seat to cut his left wrist.

160) Plaintiff was returned to the "CNYPC" by "DOCS" transport and re-admitted to the "CNYPC."

161) On or about December 2, 2005 defendant Miles again discharged the plaintiff to the care, custody, and control of "DOCS" to be returned to "WENDE."

162) Upon arrival at "WENDE," plaintiff was assigned to the "MHU" where he was interviewed by defendant David Privett.

163) When asked by defendant Privett, plaintiff told him he felt no better than he felt immediately prior to his admission to the "CNYPC."

164) Plaintiff was confined to the "MHU" Observation cell area.

165) Plaintiff was not allowed his hearing aids.

166) Plaintiff was confined in No. 6 cell, which has plexi glass covering the entire front and back of the observation cell.

167) Making it virtually impossible for plaintiff to hear.

168) Upon information and belief there were other cells in "MHU" available that did not have plexi glass.

169) On or about December 3, 2005 plaintiff became self

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH)(RFT)
~22~

abusive by using the end of a tooth paste aluminum tube to slash his wrists and forearms.

170) On or about December 5, 2005 plaintiff was interviewed by Mr. Steve Jenks, Social Worker, Mr. Pat Warren, and Dr. Goreman, MD. during clinical team rounds in the "MHU."

171) It was decided that plaintiff was to discharged from MHU and reassigned to "SHU" for punitive segregation pending a Superintendent's Hearing.

172) Plaintiff was continuously held in "MHU" until December 12, 2005 due to the unavailability of room in the "WENDE" "SHU."

173) Despite being cleared by "MHU", "Omh" staff plaintiff was still deprived use of his hearing aids, reading/writing materials, incoming and outgoing correspondence, out of cell exercise, eating utensils and use of hot water in the cell.

174) Plaintiff asserts that his confinement in the "MHU" from December 5, 2005 to December 12, 2005 was cruel and unusual punishment which created an atypical and significant hardship because such confinement and the deprivations of privileges was not an expected part of prison life, when other inmates in SHU punitive segregation status were allowed to have auxiliary aids, access to reading/writing material, incoming and outgoing correspondence, 1 hour of out of cell exercise time, eating utensils with every meal and use of hot water in the cell at least three times a day. Plaintiff was only being warehoused in the MHU till an available space opened up in "SHU," and not for any threat to himself or others.

SECOND AMENDED COMPLAINT
05 CV 1459 (DNH) (RFT)
—23—

175) On or about December 6, 2005 during clinical team rounds in the "MHU", plaintiff was interviewed through the feed up slot of his cell by Dr. Christopher M. Dekin, MD.

176) Plaintiff requested his hearing aids, reading and writing material which was denied.

177) On or about December 12, 2005 plaintiff was assigned to the SHU G block 37 company 5 cell.

178) On or about December 15, 2005 plaintiff's hearing aids were returned to him in the SHU by Mr. Steve Jenks, an employee of the New York State "OMH".

179) Mr. Jenks delivered the hearing aid cases and extra batteries to an unnamed nurse at the WENDE Regional Medical Unit (hereinafter "RMU").

180) On or about December 19, 2005, hearing officer Deputy Superintendent Health Services, Susan Post imposed a disciplinary penalty of ninety days confinement to the "SHU."

181) On or about December 23, 2005 plaintiff wrote to Ms. Susan Post asking if he could have his hearing aid cases and batteries/cases.

182) On or about December 27, 2005 plaintiff in writing to the "RMU" at "WENDE" requested replacement hearing aid batteries,

183) On or about December 29, 2005 plaintiff during SHU sickcall gave to Nurse Judy two used hearing aid batteries requesting replacement.

184) On or about December 30, 2005 plaintiff received a letter from the U.S. Department of Health and Human Services - Office of Civil Rights telling him that his previous letter of complaint was

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH)(RFT)
-24-

being forwarded to the U.S. Department of Justice (hereinafter "DOJ")
for investigation and response.

185) On or about January 1, 2006, plaintiff wrote to the
Nurse Administrator at "WENDE" "RMU" complaining about the inability
to obtain replacement hearing aid batteries and his cases.

186) On or about January 3, 2006 plaintiff submitted a complaint
to the "IGRC" (NO. WDE-24125-06) complaining about the inability to
obtain replacement hearing aid batteries, his hearing aid cases, and
the denial of "OMH" staff to conduct private interviews in the "SHU",
instead of cell side interviews in the hearing of other prisoners
and the Correction Officers.

187) Inmates in the general population are afforded an
interview room for daily sick call, and are able to meet with
OMH staff in their office at the "MHU". There is an interview
room in the "SHU", equipped with an examining table, and
holding cage for the prisoner.

188) On or about Wednesday, January 4, 2006 during
medical doctor rounds in the "SHU", Nurse Judy gave plaintiff
two replacement hearing aid batteries.

189) On or about January 10, 2006 plaintiff wrote a letter
of complaint to MS. Shanetta Brown Cutlar, Chief Special Litigation
Section - Civil Rights Division at the United States "DOJ", complaining
of the harsh conditions in the "MHU", the continuing difficulty
in obtaining reasonable accommodations at "WENDE" and confidentality
being violated by "OMH" staff at "WENDE."

190) On or about January 10th, 2006 plaintiff in writing to defendant Andzel

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH) (RFT)
-25-

"SDU" counselor at "WENDE" reasonable accommodations while confined in the "SHU."

191) On or about January 12, 2006 plaintiff requested to Dr. Shane Hutton, Phd and defendant Dekin to have his "OMH" interview conducted in private in the "SHU" interview room to maintain confidentiality.

192) Plaintiff's request was denied.

193) On or about January 17, 2006 plaintiff received the "IGRC" determination of his grievance submitted on or about January 3, 2006 (WDE-24125-06), the allegations were unfounded.

194) Plaintiff appealed the "I.G.R.C." determination to Superintendent Robert A. Kirkpatrick.

195) On or about January 19, 2006 in accordance with the "DOCS" policy plaintiff appealed the tacit denial of his request for reasonable accommodations while confined in the "SHU" to Superintendent Robert A. Kirkpatrick.

196) On or about January 20, 2006 plaintiff wrote defendant Robert Raymond regarding plaintiff's inability to obtain replacement hearing aid batteries, reasonable accommodations while confined in "SHU", and the continuous violation of confidentiality by "OMH" staff in the "SHU" for conducting interviews out in the open.

197) On or about January 20, 2006 plaintiff received a hand written memorandum from defendant Ann Andzel, granting plaintiff the reasonable accommodations of T coil induction loop, shake awake clock/alarm, and a soft pouch for his hearing aids.

198) Ms. Andzel informed plaintiff that the hard plastic hearing aid

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH) (RFT)
- 26 -

cases are not allowed in the "SHU."

199) On or about January 23, 2006 plaintiff wrote to Mr. David Privett, "MHU" Chief at "Wende" asking for his assistance in obtaining protective custody upon his release from the "SHU" because of Officer harassment and physical threats to harm plaintiff by other inmates.

200) On or about February 2, 2006 plaintiff was interviewed by Dr. Shane Hutton, Phd and defendant Dr. Christopher M. Dekin, MD in the "SHU" interview room.

201) During the interview plaintiff informed defendant Dekin, that he was feeling very depressed, being self abusive by scratching his wrists and forearms with metal staples, that he had stopped taking his prescribed psychotrophic medications.

202) It was decided that plaintiff would return to his cell in the "SHU" and would be re-interviewed in 30 days time by defendant Dekin.

203) On or about February 3, 2006 plaintiff received the Superintendent's decision from defendant Kirkpatrick with respect to a grievance filed on or about January 3, 2006 and appealed to defendant Kirkpatrick on or about January 17, 2006.

204) Superintendent Kirkpatrick determined that:

"The investigation reveals that you requested and received hearing aid batteries on 1/7/06. There is no evidence that you requested batteries prior to 1/7/06. Issues regarding the Office of Mental Health are considered non-grievable and any concerns regarding this agency must be addressed to the Wende C.F.

SECOND AMENDED COMPLAINT
05-cv-1459 (DNH) (RFT)
-27-

mental health chief.

205) Plaintiff appealed defendant Kirkpatrick's determination to "CORC" with the following statement:

"Batteries were issued on Wednesday January 4, 2006 during the medical doctor rounds. The hearing aid cases were lost by NYS DOCS, and DOCS HAS agreed to be replaced (see inmate property claim # 430-0128-05). O.M.H. has been designated as the agency to give Mental health Services to inmates. Grievant is in the Care, custody, and control of D.O.C.S., as such DOCS has a responsibility to insure that grievant receive adequate mental health care. Mental health staff that violate grievant's right to confidentiality and to adequate care should be addressed by the owning facilities administration. Especially in grievants' case, where he recently returned from a 90 day psychiatric commitment to CNYPC. Grievants inability to converse with mental health practioners in a safe and secure environment is denying his constitutional rights to mental health care."

206) On or about February 3, 2006 plaintiff received approval from the Deputy Superintendent Administration at "WENDE" for the replacement of his lost hearing aid cases. [Inmate property claim No. 430-0129-05]

207) On or about February 6, 2006 at approximately 10:00 p.m. plaintiff was removed from "SHU" and assigned to the "RMU" for 1 to 1 suicide watch.

SECOND AMENDED COMPLAINT
05-CV-1454 (DNH)(RFT)
- 28 -

208) On or about February 7, 2006, plaintiff was reassigned to the "MHU" Observation cell area.

209) Plaintiff's hearing aids were taken away by "MHU" nurses.

210) Based upon information and belief this reassignment was done because of telephone complaints made by plaintiff's domestic partner to Mr. Abdau at the "CNYPC" and Ms. Jayne Van Bramer, Division Director Office of Quality Management "OMH" that plaintiff was planning to harm himself and that his psychiatrist was ignoring him.

211) While plaintiff was confined to the "MHU" he was deprived of his two hearing aids, clothing, reading/writing materials, eating utensils, out of cell exercise, correspondence, and hot water in the cell.

212) On or about February 8, 2006 plaintiff was interviewed by defendant Derkin and Dr. Shane Hutton, Phd in Mr. Pat Warren's office in the "MHU."

213) On or about February 14, 2006 plaintiff became self abusive in the "MHU" by cutting his forearms and wrists with a piece of aluminum foil.

214) On or about February 22, 2006 at the written request of Superintendent Robert A. Kirkpatrick, plaintiff was admitted to the "OMH" at "CNYPC" pursuant to New York State Corrections Law Section 402 on an emergency admission.

215) Plaintiff was transported from "WENDE" to the "CNYPC" without his hearing aids despite requesting for them to accompany him.

216) Upon arriving at the "CNYPC" plaintiff told the admissions staff that he did not have his hearing aids.

217) At approximately 1:40 pm plaintiff was interviewed by

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH) (RFT)
- 29 -

Ms. Cheryl Myers who was accompanied by "SHTA" Stan.

218) During the interview plaintiff told Ms. Myers that he had been transferred to the "CNYPC" without his hearing aids, which were still at "WENDE" in the "MHU" Satellite.

219) On or about February 23, 2006 at approximately 10:00 am in the "B" side of the "CNYPC" treatment mall, plaintiff was interviewed by Ms. Susan Brennan, social worker, who was accompanied by "SHTA" Daniel Brown.

220) During the interview, plaintiff told Ms. Brennan the he was hearing impaired, that he was sent to "CNYPC" without his aids, and that he needed the hearings to adequately function in his surroundings.

221) On or about February 27, 2006 in the conference room on Ward 402, plaintiff was interviewed by Ms. Cheryl Myers, Susan Brennan, Dr. Norman Kelly, Phd, Ms. Ashley Williams, Dr. Sarah Nelson, MD, and Mr. Steve Montrose, Unit Manager. (The "Treatment Team")

222) Plaintiff told the "treatment team" that he was sent to the "CNYPC" from "WENDE" without his hearing aids.

223) On or about February 27, 2006, plaintiff received a letter from defendant Robert Raymond dated February ___, 2006 in response to plaintiff's complaint letter of January 20, 2006.

224) Defendant Raymond stated inter alia, that he was satisfied with the "investigation conducted at the facility level" and sees no evidence of the plaintiff's rights being violated.

225) On or about February 28, 2006, plaintiff again write to defendant Raymond, telling him plaintiff that once again he was sent to the "CNYPC" without his hearing aids and advising defendant Raymond that no investigations or plaintiff's claims were conducted at the facility level because

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH) (RFT)
-30-

Superintendent Robert A. Kirkpatrick determined that "OMH" is non-grievable through the "DOCS" Inmate Grievance Program.

226) On or about March 1, 2005 plaintiff received his two hearing aids from "WENDE" through inter departmental mail.

227) Based upon information and belief, defendant "OMH" has adopted a policy of indifference to the serious medical needs of the sensorially disabled patients in their care.

228) On or about March 2, 2006 plaintiff was examined by the medical specialist because of complaints since February 28, 2006 of severe tooth pain in the back right side of his mouth.

229) It was determined that plaintiff had an infected and possibly impacted wisdom tooth. A dental consult was submitted by the specialist for plaintiff to be taken to St. Lukes Faxton Hospital in Utica, N.Y.

230) On or about November 16, 2005 during plaintiff's prior admission to "CNYPC", plaintiff's left wisdom tooth was extracted at St. Lukes Faxton Hospital, an appointment was made for the right wisdom tooth to be extracted, however, plaintiff was returned to "DOCS" before it could be followed up on.

231) On or about March 2, 2006, plaintiff wrote a 3 page letter to defendant Devito requesting the reasonable accommodations of "CCTV" in the day room, treatment mall and a telephone amplifier so plaintiff could use the patient telephone without having to struggle to hear.

232) Other patients who are not hearing impaired at the

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH) (RFT)
-31-

"CNYPC" are allowed to watch televison in the dayroom, and use the patient telephone From 9:00 a.m. through 9:00 p.m.

233) On or about March 10, 2006, after repeated complaints of severe tooth pain plaintiff was prescribed 500 mg of naproxin, twice a day for pain management.

234) On or about Saturday, March 18, 2006 plaintiff complained to psychiatric Nurse Chris Fullem about severe pain in his right ear, and the tooth on the right side of his mouth. Also of fever symptoms.

235) Plaintiff's temperture was taken at 8:00 p.m. (99.6°) and again at approximately 10:00 pm (101°).

236) Plaintiff complained that the 975 mg of tyclnol and 500 mg of naproxin was not aleviating his pain.

237) On or about March 27, 2006, plaintiff was taken to St. Luke - Faxton Hospital in Utica, N.Y.

238) Plaintiff received a follow-up appointment for oral surgery to have the tooth extracted.

239) On or about March 27, 2006, plaintiff received a letter from defendant Raymond, that stated the transport staff "inadvertently returned" the hearing aids to "WENDE" when plaintiff was sent to the "CNYPC". "On 3/22/06 I was told that you now have received them".

240) From March 28, 2006 through April 10, 2006 complained daily of severe pain in his right ear and tooth in back right side.

241) On or about April 6, 2006 plaintiff met with Ms. Myers, Ms. Brennan and Mr. Steve Montrose.

SECOND AMENDED COMPLAINT
05-cv-1459 (DNH)(RFT)
-32-

242) Plaintiff was told that he would be discharged back to "WENDE" shortly, and that the clinical team at the "WENDE" "MHU" Satellite were aware of the pending dental consult, and that the need for follow up would be included in the discharge summary.

243) On or about April 11, 2006 plaintiff was discharged from the "CNYPC" and returned to the custody of "DOCS" at "WENDE."

244) Upon arrival at "WENDE" plaintiff was assigned to the "MHU" Observation Cell area.

245) Plaintiff's hearing aids were taken by Nurse Lori.

246) Plaintiff was interviewed by a medical nurse, and he told her that he was taking 975 mg of tyelnol and 500 mg of naproxin because of an impacted wisdom tooth.

247) Plaintiff was confined to Cell No. 1 in the "MHU" which is totally enclosed in plexi-glass, making it impossible for plaintiff to hear.

248) Based upon information and belief there were at least two other cells that "OMH" staff could of confined plaintiff to.

249) On or about April 13, 2006, plaintiff was interviewed through the feed up slot by defendant Dekin.

250) Plaintiff requested his hearing aids and to be assigned to a different cell in the "MHU."

251) Defendant Dekin did not allow this.

252) It was determined that plaintiff be discharged from the "MHU" and returned to the "SHU" at "WENDE."

253) No available cell in the "SHU", thus plaintiff remained warehoused in the "MHU" Observation cell.

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH) (RFT)
-33-

254) On or about April 20, 2006, plaintiff was discharged from the "MHU" and assigned to 6 block 42 company 15 cell in the "SHU."

255) Plaintiff had yet to receive any dental care.

256) On or about April 20, 2006 plaintiff wrote to the dental clinic at "WENDE" requesting to be seen because of severe tooth pain.

257) On or about April 21, 2006, plaintiff wrote defendant Ann Andzel "SDU", requesting reasonable accommodations while confined in the "SHU."

258) Plaintiff sent a second request to dental, requesting to be seen.

259) It is the policy at "WENDE" that any requests for dental care whether routine or for an emergency, be made directly to the dental area at the "RMU"

260) On or about April 25, 2006, plaintiff sent a third request to be seen by dental, he told them that he was experiencing severe tooth and right ear pain.

261) On or about April 28, 2006, plaintiff wrote Ms. Howe, nurse Administrator at the "WENDE" "RMU", advising her that he had sent three request for emergency dental care, that he has experiencing severe tooth and right pain and some difficulty chewing.

262) On or about April 28, 2006 plaintiff sent a letter of complaint to Ms. Jayne Van Bramer, Division Director Office of Quality Management, "OMH" concerning the poor quality of care in the "MHU" at "WENDE, the denial of reasonable accommodations at the "CNYPC", and the continuous confidentiality violations by "OMH" staff in the "SHU" at "WENDE, and the denial of adequate dental care while a patient in the "CNYPC."

263) On or about May 1, 2006, plaintiff submitted a grievance

SECOND COMPLAINT
05-CV-1459 (DNH) (RFT)
- 34 -

complaint to the "IGRC" requesting that he be seen by dental; that the facility adopt a policy for follow-up of pending consults when returned from the "CNYCP" and that provisions be made for emergency dental care for inmates confined to the "SHU" when warranted.

264) On or about May 1, 2006 at approximately 10:00 a.m. plaintiff was examined by Dr. William S. Mays, DDS who extracted plaintiff's right wisdom tooth.

265) On or about May 2, 2006, plaintiff appealed the tacit denial of his request for reasonable accommodations in the "SHU" to Superintendent Robert A. Kirkpatrick.

266) On or about May 4, 2006, plaintiff verbally requested to Mr. Steve Jenks, Social Worker for "OMH" during the "SHU" rounds, to be seen by Dr. Christopher M. Dekin, MD.

267) Plaintiff also wrote a two page letter, which he sent to defendant Dekin, requesting to be seen because the plaintiff was feeling depressed, anxious, and paranoid, or in the alternative to be placed back on medication until he can be re-evaluated at a later time.

268) Defendant Dekin had discontinued the plaintiff's medication regimen due to plaintiff's non-compliance on or about April 13, 2006.

269) On or about May 9, 2006, plaintiff wrote to Ms. B. Aiello-Howe, Nurse Administrator at "WENDE", complaining that plaintiff had not been seen by dental to have the sutures removed from his mouth and that he was experiencing pain in his bottom jaw on the right side.

270) On or about May 10, 2006, at approximately 1:55 p.m. plaintiff was interviewed by Steve Jenks, Social Worker for "OMH" and

SECOND AMENDED COMPLAINT
05-CV-1459
-35-

defendant Christopher M. Dekin, MD in the "SHU" interview room at "WENDE".

271) Plaintiff told defendant Dekin that plaintiff was experiencing mood swings which were causing plaintiff to cry; had a loss of appetite; couldn't sleep; been have painful migraine headaches and that plaintiff has been having impulsive thoughts to become self abusive.

272) Plaintiff was not assigned to the "MHU" for observation or prescribed any medications to treat these symptoms.

273) Based upon information and belief, "DOCS" exercises undue influence and control over the employee's of "OMH" who are assigned to the "MHU" at "WENDE", thus interfering in the treatment of mentally ill prisoners' at "WENDE"

274) On or about May 15, 2006, plaintiff submitted a grievance complaint to the "IGRC", complaining of the "IGRC"'s failure to respond to plaintiff's prior grievance complaint, No. WDE-24659-06, and complaining of the dental department's failure to timely remove the suture's from his mouth.

275) On or about May 16, 2006, "IGRC" determined that the issues raised in grievance no. WDE-24659-06 have been resolved because grievant was seen by dental on May 1, and 15th of 2006.

276) Plaintiff appealed the "IGRC" determination to Superintendent Robert A. Kirkpatrick.

277) On or about May 16, 2006, plaintiff received a note from the "IGRC" telling plaintiff that the complaint concerning being denied reasonable accommodations in the "SHU" (WDE-24700-06) has been sent directly to Superintendent Kirkpatrick for investigation and response, no "IGRC" hearing will be held.

278) At approximately 1:30 pm, plaintiff was intervied by Mr.

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH) (RFT)
-36-

D.R. Post, Crisis Intervention Unit, concerning the grievance submitted about Ms. Ann Andzel's tacit denial of plaintiff's request for reasonable accommodations in the "SHU."

279) Plaintiff informed Mr. Post that he had received his T-Coil induction loop, and shake awake alarm on or about May 10, 2006 from a officer in the "SHU", who found it in storage, however, Ms. Andzel has not yet responded to plaintiff's written requests, nor did she have anything to do with the finding of the items.

280) On or about May, 24, 2006 at approximately 8:40 a.m. plaintiff spoke to Dr. Jacquline Levitt, MD, about plaintiff's inability to sleep, loss of appetite, and migraine headaches plaintiff had been having, he told her that Dr. Dekin told him to see medical.

281) Dr. Levitt told plaintiff that his concerns should be raised with the "MHU" staff, because she felt that the symptoms he was complaining of were due to his mental illness and not a physical ailment.

282) On or about May 24, 2006 at approximately 12:52 p.m. in the "SHU" plaintiff spoke with David Privett, "MHU" chief and told defendant Privett what Dr. Levitt told plaintiff.

283) Plaintiff was told that "OMH" policy has changed and "OMH" staff no longer treat sleep problems, that needs to be addressed by the "DOCS" medical department.

284) On or about May 25, 2006, plaintiff submitted a grievance complaint (No. WDE-   -06) with "IGRC" complaining of being unable to obtain adequate medical/mental health treatment.

SECOND AMENDED COMPLAENT
05-CV-1459 (DNH) (RFT)
-37-

285) Plaintiff in the above grievance requested the
following action to be taken:
(i) That the administration advise whether such
a new policy exists, that "OMH" no longer treats the symptoms of loss of sleep,
and loss of appetite, and that the "DOCS" medical does;
(ii) That adequate treatment be provided;
(iii) That the discrimination based on plaintiff's
mental illness cease;
(iv) That grievant be compensated; and
(v) That a copy of the grievance be sent to
Office of Diversity Management pursant to Title 7 N.Y.C.R.R. Section
701.12 (c) unlawful discrimination.
286) On or about May 24, 2006, plaintiff received "IGRC"'s
response for grievance no. WDE-24748-06, filed on or about May 15, 2006
which stated:
"Grievant was seen on 5/15/06 for removal of his sutures.
Those in SHU who require Emergency dental treatment on as
needed basis, regardless of the day of the week."
287) Plaintiff appealed to defendant Robert A. Kirkpatrick.
288) On or about May 24, 2006, plaintiff received reseponse to his
grievance no. WDE-24700-06 by Deputy Superintendent for Security G. Monahen, as
Acting Superintendent, which held that:
"This grievance was investigated by a Department Head and
includes an interview with the grievant and written statement
from the employee named in the complaint. The grievant provided
no witnesses. The grievant states he needed reasonable accommodations

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH) (RFT)
-38-

because he is hearing impaired. His property was missing because of three moves in a very short time. The employee states that because of three moves in a short period of time the grievant's property was held up.

The investigator states the grievant is entitled to reasonable accommodations. The grievant is satisfied in that he received his t-coil induction loop and shake awake alarm. There is no evidence to support this grievance at this time."

289) Plaintiff appealed to the "CORC" with the following statement:

"Problems with obtaining reasonable accommodations has been an ongoing problem. (see # WDE-23439-05, 24125-06) Grievant has been housed in SHU since 8/27/05. Except for 9/8/05 - 12/2/05 and 2/22/06 - 4/11/06 when he was committed to C.N.Y.P.C. Grievant's property has been in storage in SHU since 8/27/05. No response was given to the action requested. SDU staff are not in compliance with Dir # 2612."

290) On or about May 26, 2006, plaintiff sent a lengthy letter to defendant Robert A. Kirkpatrick, stating that plaintiff was in fear of being physically harmed by other prisoners, and requesting a transfer to another hearing impaired and mental health level appropriate facility, or in the alternative to be placed into protective custody housing once released from "SHU" confinement on 7/10/06; as well as plaintiff's inability to obtain adequate mental health treatment.

291) On or about May 30, 2006, plaintiff wrote to defendant Andzel if she could submit a transfer request because plaintiff is in fear that he would be physically harmed if he returned to general

SECOND AMENDED COMPLAINT
05-CV-1459 (OMH) (RFT)
      -39-

population.

292) On or about May 31, 2006 at approximately 8:25 a.m. plaintiff spoke to Dr. Jaquline Levitt, MD and Ms. B. Aiello-Howe, Nurse Administrator about the fact that plaintiff has only been able to sleep for about two hours a night, that he was still having painfull headaches, and hasn't felt like eating much.

293) On or about May 31, 2006, plaintiff wrote a letter to Ms. Susan Post, Deputy Superintendent Health Services, where plaintiff told Ms. Post that he has been being shuffled back and forth between "OMH" and "DOCS" medical staff with no iota of medical treatment.

294) Based upon information and belief, plaintiff, is being retaliated against by "OMH" "MHU" staff due to the numerous grievance complaints and current litigation he has filed.

295) On or about June 5, 2006 plaintiff received a memorandum from Ms. Susan Post in response to plaintiff's letter to Superintendent Kirkpetion and Susan Post, telling plaintiff that in part his problems are due to his behavior and that plaintiff should work with his counselor and assigned "OMH" Therapist to help work on his problems, including relationships with peers.

296) On or about June 6, 2006, plaintiff received new hearing aid batteries that were asked for on May 31, 2006.

297) Plaintiff wrote to defendant Raymond to complaint of the inadequate mental health treatment at "WENDE" and requested his assistance with obtaining a transfer to an appropriate facility.

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH) (RFT)
-40-

298) On or about June 7, 2006 at approximately 1:15 p.m., in the "SHU", plaintiff spoke with defendant David Privett, and told him that he was still feeling depressed, having problems with sleep, not eating, having painful migraine headaches, and was feeling empty inside.

299) Based upon information and belief defendant Privett came to speak with plaintiff in response to a telephone complaint to defendant Anthony Devito, Associate Director Quality Management at the "CNYPC" made by plaintiff's domestic partner.

300) On or about June 8, 2006 at approximately 1:25 p.m., in the "SHU" interview room at "WENDE" plaintiff was interviewed by Dr. Christopher M. Dekin, Mr. David Privett, and Mr. Steve Jenks, Social Worker.

301) Plaintiff told the above interviewers that he has still been suffering with insomnia, loss of appetite, migraine headaches, depression, and feeling empty.

302) Plaintiff was not re-assigned to the "MHU" nor prescribed any medication.

303) On or about June 8, 2006, plaintiff spoke to the assigned "SHU" counselor on 37 company to inquire about a transfer and plaintiff's request for protective custody.

304) Plaintiff was told "you're not moving, and request for PC should be made to security."

305) Based upon information and belief "DOCS"

SECOND AMENDED COMPLAINT
05-CV-1459 (DNH) (RFT)
         -41-

policy as stated in Directive No. 4948 entitled
"protective custody status" is that a request for protective
custody can be made verbally, in writing or as a recomendation
to any employee, contractor, or agent or "DOCS" and to be
investigated by a corrections counselor for the appropriateness
of assignment to protective custody status.

   306) Plaintiff has requested to be interviewed for protective
custody in writing to defendant Kirkpatrick, Raymond,
Privett and Andzel. He has verbally requested protective custody
to defendant Dekin.

   307) No request whether made in writing or verbally has
been investigated and or responded to.

— 42 —

## CAUSES OF ACTION

I:  Defendants' Miles, CARR, ANDZEL, Kirkpatrick
Law, Patrick, Devito, Christine, Privett
and Dinardo discriminated against
plaintiff based on his physical disability and
mental illness in violation of Section 504
of the Rehabiliation Act, 29 U.S.C. Section 794;

II:  Defendant's Office of Mental Health and New York
State Department of Correctional Services failed to
provide plaintiff with reasonable accommodations
for his bi-lateral hearing impairment, in violation
of Section 504 of the Rehabiliation Act, 29
U.S.C. Section 794 and the American's with
Disabilites Act, 42 U.S.C. Sections 12131-
12133;

III:  Defendant Office of Mental Health and
Devito were deliberate indifferent to the
needs of deaf and hard of hearing prisoners/
patients in violation of plaintiff's
substantive and ~~the~~ procedural due process
rights under the U.S. Constitution, Amendment
14;

IV:  Defendants' Miles, Carr, Law, Devito,
Patrick, Christine, ~~the~~ Office of Mental Health
Kirkpatrick, Deakin and defendant Privett

infringed on the rights of plaintiff as
a qualified individual with a disability
to have his confidential medical needs,
to have confidential mental health communications
and decision making done in some sembalance
of privacy in violation of the 8th Amendment
proscription against cruel and unusual punishment,
and the Equal Protection Clause of the 14th
Amendment;

V: Defendants' Miles, Law, Devito, Carr, Dekin,
Office of Mental Health and New York
State Department of Correctional Services
exhibited deliberate indifference to the
serious medical needs of plaintiff as a
hearing impaired and mentally ill inmate
in violation of the 8th Amendment to the
U.S. Constitution;

VI Defendants' Dinardo, Devito, Miles, Carr, Patrick,
and Andzel retaliated against plaintiff
for engaging in constitutionally protected
conduct of filing grievances and letters
of complaint in violation of the 1st
and 14th Amendments to the U.S.
Constitution;

44

VII  Defendants' Miles, CARR, DEVITO, ANDZEL, LAW, PRIVETT, CHRISTINE, RAYMOND FAILED TO PROVIDE OR INSURE REASONABLE ACCOMMODATIONS FOR PLAINTIFF'S BI-LATERAL HEARING IMPAIRMENT WERE RECEIVED, DESPITE THEIR PERSONAL KNOWLEDGE THAT PLAINTIFF WAS ENTITLED TO THE ACCOMMODATIONS AND NEEDED THE ACCOMMODATIONS TO PARTICIPATE IN DAILY LIFE ACTIVITIES IN VIOLATION OF THE AMERICAN'S WITH DISABILITIES ACT, 42 U.S.C. Sections 12131-12133.

VIII  Defendant's Miles, Devito, Raymond, Carr, Dekin, Privett, and Kirkpatrick Showed DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEED FOR TREATMENT OF A MENTAL ILLNESS THUS CREATING AN ATYPICAL AND SIGNIFICANT HARDSHIP IN VIOLATION OF THE 8TH AMENDMENT U.S. CONST. PROSCRIPTION AGAINST CRUEL AND UNUSUAL PUNISHMENT.

IX  Defendant's Privett, Dekin, Raymond, and Kirkpatrick failed to PROTECT PLAINTIFF FROM HARM IN VIOLATION OF THE 8TH AND 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

X  Defendant's Andzel, Raymond, Kirkpatrick and Privett denied plaintiff procedural and substantive due-process of law in violation of the Due Process Clause of the 14th Amendment.

Second Amended Complaint
05 cv 1459 (DNH) (RFT)
-45-

# PRAYER FOR RELIEF

## DECLARATORY

FIND THAT PLAINTIFF IS A QUALIFIED INDIVIDUAL WITH A DISABILITY AS DEFINED BY THE AMERICAN'S WITH DISABILITIES ACT OF 1990 AND SECTION 504 OF THE REHABILITATION ACT OF 1973;

FIND THAT DEFENDANT'S VIOLATED PLAINTIFF'S RIGHT TO BE FREE FROM UNLAWFUL DISCRIMINATION BECAUSE OF A PHYSICAL DISABILITY AND MENTAL ILLNESS;

FIND THAT PLAINTIFF WAS DENIED REASONABLE ACCOMMODATIONS FOR HIS BI-LATERAL HEARING IMPAIRMENT UNDER 42 U.S.C. Section 12101;

FIND THAT DEFENDANT'S HAVE VIOLATED PLAINTIFF'S RIGHT TO BE FREE FROM RETALIATION FOR ENGAGING IN CONSTITUTIONALLY PROTECTED CONDUCT IN VIOLATION OF THE 1st AND 14th Amendment to the U.S. Constitution;

FIND THAT DEFENDANT'S FAILED TO PROVIDE ADEQUATE MEDICAL CARE IN VIOLATION OF THE 8TH AMENDMENT TO THE U.S. CONSTITUTION;

FIND THAT DEFENDANT'S WERE DELIBERATELY INDIFFERENT TO THE SERIOUS MEDICAL NEEDS OF THE PLAINTIFF IN VIOLATION OF THE U.S. CONSTITUTION'S 8TH AMENDMENT PROSCRIPTION AGAINST CRUEL AND UNUSAL PUNISHMENT; (mental health)

FIND THAT DEFENDANT'S WERE DELIBERATELY INDIFFERENT TO THE SERIOUS MEDICAL NEEDS OF THE PLAINTIFF IN VIOLATION OF THE U.S. CONSTITUTIONS 8TH AMENDMENT PROSCRIPTION AGAINST CRUEL AND UNUSAL PUNISHMENT;

SECOND AMENDED COMPLAINT
05 CV 1459 (ONH) (RFT)
— 46 —

FIND THAT PLAINTIFF WAS DENIED EQUAL PROTECTION
UNDER THE LAW IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE 14TH
AMENDMENT, U.S. CONSTITUTION;

FIND THAT PLAINTIFF SUFFERED AN ATYPICAL AND SIGNIFICANT
HARDSHIP BY BEING DENIED ADEQUATE MEDICAL AND PSYCHIATRIC
TREATMENT IN VIOLATION OF THE 8TH AMENDMENT, U.S. CONSTITUTION; and

FIND THAT DEFENDANT'S VIOLATED PLAINTIFF'S SUBSTANTIVE
AND PROCEDURAL RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE 14TH
AMENDMENT, U.S. CONSTITUTION.

## COMPENSATORY:

Plaintiff herein demands compensatory damages
against each and every defendant in the amount of $9,999.99 (
nine thousand, nine hundred ninety-nine) dollars (ninety-nine) cents.

## PUNITIVE:

Plaintiff herein demands the assessment of punitive
damages against each and every defendant in the amount of
$650,000.00 (SIX HUNDRED AND FIFTY THOUSAND) DOLLARS, to
be assessed as follows:

| Defendant: | |
|---|---|
| OFFICE OF MENTAL HEALTH | $160,000.00 |
| N.Y.S. Dep't OF CORR SRVCS | $60,000.00 |
| REGENA MILES | $60,000.00 |
| CHRISTOPHER DEVIN | $60,000.00 |
| ROBERT CARE | $40,000.00 |
| ROBERT KIRKPATRICK | $40,000.00 |

SECOND AMENDED COMPLAINT
05 CV 1459 (CONH) (CFT)
— 47 —

| | | |
|---|---|---|
| ANTHONY DEUEFO | $ | 40,000.00 |
| JOHN DINARDO | $ | 40,000.00 |
| MS. CHRISTENE | $ | 40,000.00 |
| ANN ANDEEL | $ | 25,000.00 |
| PATRICK | $ | 25,000.00 |
| CINDY LAW | $ | 25,000.00 |
| DAVID PREULTT | $ | 25,000.00 |
| ROBERT RAYMOND | $ | 25,000.00 |
| | $ | 650,000.00 |

## INJUNCTIVE

Plaintiff herein prays for a permanent injunction against defendant OFFICE OF Mental Health requiring this defendant at the Central New York Psychiatric Center to comply with the statutory provisions of 28 C.F.R. Section 35.107 and designate a responsible employee to coordinate the efforts of evaluating requests for reasonable accommodations of deaf/hearing impaired patients, establishing an appeal review process of determinations made by this employee, to adopt, publish, and enforce grievance procedures providing for the prompt and equitable resolution of complaints alleging failure to accommodate, discrimination and retaliation.

The appointment of a Special Master to enforce the injunction.

— 48 —

## VERIFICATION

STATE OF NEW YORK )
COUNTY OF ERIE )  ss:          05 cv 1459 (DNH) CRFT)

I, Matthew John Matagrano, being duly sworn
deposes and says:

That I am the pro-se plaintiff in the within
action, that I have read the foregoing Supplemental Amended
Complaint and know the contents thereof; That the
Same is true to my own knowledge, except as to
those matters herein to be stated and alleged upon
information and belief, and as to those matters I
believe them to be true.

Dated: June 12, 2006
Alden, New York.

Respectfully Submitted,

Matthew John Matagrano
04A5883
Plaintiff Pro-se
Wende Correctional Facility
3040 Wende Rd. Po. Box 1187
Alden, N.Y. 14004-1187
(716) 937-4000

Sworn to before me this
12 day of June, 2006

Marian Duminuco
NOTARY PUBLIC

MARIAN DUMINUCO
Notary Public, State of New York
Qualified in Erie County
Commission Expires Jan. 2009