UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
MATTHEW JOHN MATAGRANO,
                          Plaintiff,


     -against-                              PRO-SE
                                            SUPPLEMENTAL
                                            COMPLAINT

REGINA MILES, MD. et.al;
                          Defendants.
                                            05-cv-1459 (DNH)
                                                      (RFT)

        PLEASE TAKE NOTICE that, this is the pro-se
plaintiff's supplemental pleading to the Second Amended Complaint
filed in this Court on June 15, 2006, and docketed by order
of U.S. Magistrate Judge Randolph F. Treece, on September 5,
2006.


SUPPLEMENTAL STATEMENT OF FACTS:

        308) On or about June 19, 2006, in the "SHU" at
"Wende", plaintiff self mutilated both wrists, forearms and
the left side of his neck.

        309) When plaintiff was discovered at approximately
7:00 a.m., he was brought to the "RMU" for wound cleansing,
and subsequently housed in the "MHU" observation cell. (MH-OB-
001) where plaintiff again was placed behind plexi glass without
the use of his bilateral hearing aids.

310) At approximately 10:30 a.m., and again at 12:30p.m., plaintiff while housed in the "MHU" observation cell, self mutilated both left and right calf area, and both upper left and right arms using a jumbo metal paper clip.

311) On or about June 20, 2006, plaintiff met with Mr. Steve Jenkins, social worker, and Dr. Christopher M. Dankin, MD to discuss the plaintiff's return to the "SHU".

312) Plaintiff informed defendant Dankin that he was feeling depressed and hopeless and still felt like hurting himself.

313) No special precautions or medications was given to prevent plaintiff from harming himself further.[1]

314) At approximately 5:45 p.m. plaintiff was observed cutting his left arm, and the left side of his neck with a piece of glass, that plaintiff subsequently swallowed.

315) At approximately 7:30 p.m., plaintiff was on one on one supervision in the "RMU".

316) From June 19, 2006 through June 23, 2006, plaintiff refused to drink or eat any substance.

317) On or about June 23, 2006, plaintiff spoke to defendant Robert A. Kirkpatrick, Superintendent of "WENDE" the WATCH Commander, and the area supervisor in the Special watch room of the "WENDE" "RMU".

318) Plaintiff informed defendant Kirkpatrick that he was Requesting protective custody status because he was being

---

[1] Based upon information and belief, plaintiff could have been prescribed medications in accordance with the Office of Mental Health and the department of correctional services politics, to negate the symptoms of his impulsivity. Plaintiff was only being prescribed 50 milligrams of Trazadone at hour of sleep, a mild antidepressant.

harassed by the corrections officers and was in fear for his life By the other prisoners' threats of physical harm.[2]

319) On or about June 23, 2006, plaintiff was reassigned to the "MHU" observation cell. (MH-OB-002)

320) On or about July 6, 2006, plaintiff was transferred to the care, custody and control of the "CNYPC".

321) On or about July 7, 2006, in the treatment mall at the "CNYPC", plaintiff met with defendant Anthony Devito.

322) Plaintiff informed defendant Devito about the difficulties with obtaining individual psychotherapy, medication(s), and the continuous confidentiality breaches by the "OMH" staff at "WENDE".[3]

323) plaintiff, further informed defendant Devito of the Constant harassment by corrections officers and the physical threats from other prisoners. Thus plaintiff requested an alternate placement within "DOCS".

324) On or about July 10, 2006, plaintiff met with Ms. Diane Drake, RN, who was assigned as his primary therapist.[4]

325) Plaintiff informed Ms. Drake that he was bi-laterally hearing impaired and would need the reasonable accommodations of hearing aid batteries, telephone amplification and closed-caption television for the ward day room and the treatment mall,[5] and

---

[2] Plaintiff on or about May 25, 2006, wrote to defendant Kirkpatrick requesting protective custody.

[3] Defendant Devito is the Associate Director of Quality Management of the Central New York Psychiatric Center, responsible for overseeing the quality of care/treatment of both the inpatients and out-patients of the "CNYPC" satellite units within "DOCS".

[4] Primary therapist are assigned upon admission to "CNYPC" to coordinate all areas of the patients care, treatment and discharge planning.

[5] Plaintiff is a qualified individual with a disability as defined in title 42 U.S.C. § 12101, American's With Disabilities Act of 1990, and Title 29 U.S.C. § 794, Section 504 of the Rehabilitation Act of 1973.

that  he was requesting an alternative placement, if and when he
was returned to the custody of "DOCS".

326) Based upon information and belief, Defendant Anthony
Devito in his capacity as Associate Director of Quality
Management had numerous telephone communications with plaintiff's
domestic partner concerning the inadequate course of psychiatric
treatment at "CNYPC" and at "WENDE".

327) On or about July 20, 2006, plaintiff, wrote a five page
letter to defendant Anthony Devito, Associate Director, quality
Management "CNYPC".

328) In this letter plaintiff expressed his concern of
retaliation by the staff at the "CNYPC" because of their prior
quick decision to discharge the plaintiff and return him to
"DOCS".[6]

329) On or about July 20, 2006, plaintiff was transferred to
Ward 301 continuing care.

330) On or about July 27, 2006, plaintiff met with Dr.
Nichole Marioni, PhD.

331) During the meeting, plaintiff again requested a
telephone amplifier and closed caption for the dayroom and
treatment mall.

332) Plaintiff was told that the hospital was in the process
of obtaining the telephone amplifiers and that the closed caption
for the television viewing would be looked into.

333) Plaintiff stated to Dr. Marioni that, this admission

---

[6] Plaintiffs prior admission to "CNYPC" was from February 22, 2006 until April 11, 2006.

was his third admission to the "CNYPC"[7] and that he has never received telephone amplification or "CCTV" despite numerous request for the same.

334) On or about July 27, 2006, plaintiff was found to be ill requiring inpatient treatment at the "CNYPC" for a period not to exceed six months[8] by the Acting Justice of Oneida County Supreme Court.

335) Defendant Office of Mental Health has continuously been deliberately indifferent to the needs of deaf and hard of hearing forensic patients in it's care at the "CNYPC" by failing to provide telephone amplifiers and closed caption television.

336) On or about August 01, 2006, at approximately 7:30 p.m., plaintiff requested to Senior "SHTA" Joe White on Ward 301 for the closed caption to be turned on for the dayroom Television.

337) Plaintiff was told no.

338) On or about August 1, 2006, plaintiff signed up to see defendant Cindy Law to report left ear pain.[9]

339) On or about August 2, 2006, plaintiff signed up to see defendant Law to report left ear pain.

340) Based upon information and belief, on or about August 2, 2006, plaintiff's domestic partner spoke with defendant Devito via telephone to advise him that plaintiff had not yet received

---

[7] Plaintiff's prior admissions were September 8, 2005 through December 2, 2005; and February 22, 2006 through April 11, 2006.
[8] Plaintiff was involuntarily committed to the Central New York Psychiatric Center pursuant to Article 16 Section 402 of the State of New York Correctional Law.
[9] Defendant Cindy Law is the assigned Nurse Practitioner (Medical Specialist) for Ward 301.

the requested reasonable accommodations for his bi-lateral hearing impairment and to inquire on the status of the alternative placement request.[10]

341) On or about August 3, 2006, plaintiff again signed up to see defendant Law to report left ear pain.

342) On or about august 4, 2006, for the fourth consecutive day, plaintiff requested to be examined by defendant Law because of left ear pain.

343) Plaintiff complained to his assigned primary therapist, that Ms. Law had not seen plaintiff as a result of his numerous complaints of left ear pain.

344) On or about August 6, 2006, plaintiff complained of left ear pain to Nurse Maureen Maher, requesting to be seen by the doctor.

345) At approximately 1:30 p.m. Maureen Maher gave plaintiff a 600 milligram tablet of Motrin.

346) On or about August 7, 2006, plaintiff signed to see defendant Law to have his left ear examined.

347) At approximately 10:45 a.m. plaintiff was examined by defendant Law, in the presence of plaintiff's assigned primary therapist and Nurse Maureen Maher.

348) On or about August 7, 2006, plaintiff received the "CORC"[11] decision in relation to a grievance filed on or about May 3, 2006, at "WENDE" (WDE-24700-06)which stated:

---

[10] Plaintiff requested an alternative placement out of Wende Correctional Facility because of his fears of physical assault and the on going harassment by the facility's officers.

[11] Central Office Review Committee of the Inmate Grievance Program for the Department of Correctional Services.

"Grievant's request unanimously accepted in part. Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted only to the extent that CORC uphold the determination of the Superintendent for the reasons stated. CORC notes that the facility is providing reasonable accommodations as in compliance with Directive 2612[12]. CORC notes that SDU[13], staff is in compliance with Directive 2612. CORC advises grievant to contact his assigned correction counselor to request reasonable accommodation forms."

349) Based upon information and belief, plaintiff in good faith has exhausted all available administrative remedies.

350) On or about August 16, 2006, plaintiff complained to defendant Cindy Law, that the psychiatric medication he was being prescribed was causing him medical side effects of water like bowel movements, and sever hand tremors.[14]

350) On or about September 12, 2006, plaintiff again complained to defendant Cindy Law that psychiatric medication was causing medical problems and that the assigned psychiatrist refused to change the medication, given the excuse that the Lithium was at a therapeutic level and that a little diarrhea was not a problem.

352) On or about September 11, 2006, plaintiff was provided with a handheld amplifier to use for the collect phone and for the phone calls issued by the primary therapist.

353) On or about September 12, 2006, plaintiff refused his medication and subsequently spoke with Dr. Nicole Marioni about the difficulties he was experiencing in having his medication reevaluated.

354) On or about September 14, 2006, the assigned

[12] The directive quoted as 2612 is entitled as "Inmates with Sensorial Disabilities" and outlines the requirements of the Department of corrections to provided reasonable accommodations to inmates in their care custody and control as mandated by the American's With Disabilities Act.
[13] Sensorial Disabilities Unit.
[14] Plaintiff's medication regiments of Lithium was increased from 1200 mgs a day to 1500 mgs a day.

psychiatrist reduced plaintiff's lithium dose to 1200 milligrams a day, she refused to change the medication to a different stabilizer, to avoid the medical side effects plaintiff had been experiencing.

355) On or about September 18, 2006, through September 22, 2006, plaintiff requested to be seen by Ms. Maize Shaw, Social Worker; Dr. Nicole Marioni and Dr. Young Chu, Md, due to the fact that the plaintiff's assigned primary therapist was on extended vacation since August 25, 2006.

356) Plaintiff was not seen, except for a weekly telephone call, on Wednesday, September 20, 2006 with Dr. Nicole Marioni, PhD.

357) On or about September 25, 2006, plaintiff met with his therapist, Ms. Diane Drake, to discuss why plaintiff had been refusing his lithium dosages, and use of the close caption option on the dayroom television.

358) Plaintiff advised Ms. Drake, that he was still experiencing loose watery bowl movements, as well as severe physical pain because of hemorrhoids, whish was the reason why he was refusing to take the prescribed lithium. As to the use of the close caption in the dayroom, plaintiff told Ms. Drake that because of the other patients on the ward complaining of the text being on the screen, and no support from the staff, he had not been using the close caption option.[15]

359) On or about September 26, 2006, at approximately 8:25

---

[15] The "SHTA"'s on the ward control the television and remote control that would activate the close caption.

a.m. , plaintiff met with defendant Cindy Law, Nurse Maureen Maher, and "SHTA" Chad Asch in the Nurses station on Ward 301.

360) Plaintiff's refusing his lithium medication since Friday, September 22,2006, was discussed.

361) Plaintiff did advise defendant Cindy Law, that although the lithium was controlling the symptoms of his mental illness, he was continuing to have loose and watery bowel movements, that were causing him severe physical pain because of hemorrhoids.

362) Plaintiff's lithium level in his blood as of September 22, 2006, was non-therapeutic, and would have to be re-increased to obtain a therapeutic level.[16]

363) On or about September 27, 2006, plaintiff's assigned psychiatrist, Dr. Young Chu, Md., changed plaintiff's medication from 1200 milligrams of lithium a day to liquid depakene.

364) On or about September 27, 2006, plaintiff gave his assigned primary therapist the audio-logical examination, and frequency modulation examination performed by the New York City League for the Hard of Hearing in 2001 and 2002, which showed that the plaintiff suffers from a *mild to severe sensorneural hearing loss in the right ear and a moderate to profound sensorneural hearing loss in the left ear, with 42 % decibel loss in the right ear and 53 % decibel loss in the left ear.*[17]

365) Based upon information and belief, on or about September 28, 2006, via telephone, plaintiff's domestic partner spoke with defendant Devito and an investigator from Risk

---

[16] Plaintiff's level was .43, a therapeutic level range would be .60 - 1.3.

[17] The exams were performed at the request of the New York State Vocational Educational Services for Individuals with Disabilities (V.E.S.I.D.) to evaluate what reasonable accommodations the plaintiff would need to attend an educational program or find gainful employment.

Management, identified as " George Fogg" to voice concerns over plaintiff's medication, alternate placement request and discrimination because of his bi-lateral hearing impairment.

366) On or about September 28, 2006, defendant Law, wrote a medical order for q-tips for plaintiff to clean out his ears bilaterally at time of sleep.

367) At approximately 8:25 p.m. during medication rounds, nurse "Kathleen" gave plaintiff two broken q-tips, measuring approximately three to four inches in length.

368) When plaintiff questioned Nurse "Kathleen" why the q-tips were broken, she called plaintiff a "smart shit" and stated that she would get the order d c' d.[18]

369) Nurse "Kathleen" also refused to comply with the medical specialist written order to provide plaintiff with two alcohol prep pads to clean his hearing aids at hour of sleep.[19]

370) Plaintiff requested to speak with the Nurse Administrator on duty and the "SHTA" Dave Riggles on Ward 301.

371) No action was taken.

372) On or about September 29, 2006, Plaintiff requested to speak with Ms. Judy Giehl, Nurse Administrator; Dr. Nicole Marioni, PhD, Unit Coordinator; Primary Therapist Diane Drake; Assigned psychiatrist Dr. Y. Chu, Md; and an investigator from the Office of Quality Management–Risk Management.

373) Based upon information and belief, defendant Office of

---

[18] The nurse was referring to having the order discontinued by the doctor on call.
[19] The cleaning tool for plaintiff's hearing aids was confiscated as contraband because of the hook sharp end of the tip.

Mental Health, has continuously failed to adequately train it's employees in the proper treatment and care of deaf/hard of hearing patients in the forensic psychiatric unit at the "CNYPC".

374) On or about September 29, 2006, plaintiff spoke with Dr. Nicole Marioni, PhD. And Diane Drake, Nurse III, to express his concern over the continuous interference with his medical treatment as ordered.

375) On or about October 2, 2006, through October 6, 2006, daily, plaintiff requested to see defendant Law to report severe physical pain and bleeding in his rectal area due to external hemorrhoids. (see pp 361)

376) On or about October 4, 2006, plaintiff wrote a five(5) page letter to Dr. Donald sawyer, PhD Acting Executive Director "CNYPC" concerning plaintiff's inability to obtain proper medical care.

377) On or about October 6, 2006, plaintiff met with Nurse Administrator Judy Giehl to file a complaint that Ms. Cindy Law hadn't seen plaintiff despite his numerous complaints of severe pain in his rectal area.

378) Plaintiff was advised that given the Federal holiday weekend he would have to wait until Tuesday, October 10, 2006 to be seen by a doctor.[20]

379) At approximately 6:00 p.m. plaintiff met with Ms. Diane Drake and informed her that he was in sever pain from external hemorrhoids that were also bleeding.

---

[20] There is a medical doctor available 24 hours, 7 days a week at "CNYPC", though he is a psychiatrist.

380) Ms. Drake at approximately 6:45 p.m. had the medical doctor on call prescribe an external topical cream to numb the pain.

381) On or about October 11, 2006, plaintiff was examined by defendant Law due to his complaints of physical pain in his rectal area, broken right hearing aid, and sore throat.

382) Defendant Law refused to request an audiological consult because plaintiff's upcoming discharge back to "DOCS".

383) On or about October 12, 2006, plaintiff met with George Fogg, Rn. from Risk Management to complain of the inadequate medical care by defendant Cindy Law.

384) On or about October 16, 2006, plaintiff was discharged from "CNYPC" and returned to the Wende Correctional Facility - Satellite Mental Health Observation Unit (MH-OB-006)

385) On or about October 19, 2006, plaintiff was transferred to the Special Housing Unit at "WENDE" to face disciplinary charges stemming from his acts of self mutilation on June 19, 2006, and June 20, 2006.

386) On or about October 20, 2006, plaintiff filed institutional grievance No. WDE-25482-06 complaining that defendant Kirkpatrick and "DOCS" was disciplining plaintiff because of his severe mental illness, asking that the plaintiff be immediately released and be justly compensated for time spent in "SHU".

387) On or about October 20, 2006, plaintiff in a written request to the "SDU" at "WENDE" requesting the reasonable accommodations of t-coil induction loop; shake awake

alarm/pillow; and soft hearing aid pouch. Plaintiff also advised that his right hearing aid was broken.

388) On or about October 23, 2006, plaintiff spoke with defendant Privett to inquire about the continuing need to be housed in disciplinary segregation.

389) Plaintiff was advised to wait out the disciplinary process and disposable housing would be discussed.

390) On or about October 23, 2006, plaintiff sent a second written request to the "SHU" at "WENDE" requesting reasonable accommodations while confined to the "SHU", during his upcoming Superintendent's Hearing and to report that his right hearing aid was broken.

391) On or about October 25, 2006, plaintiff requested to Dr. Jacquline Levitt, Md. during "SHU" sick call to be able to see the audiologist because his right hearing aid was broken.

392) On or about October 25, 2006, plaintiff filed an institutional grievance complaint due to "DOCS" failure to provide him with reasonable accommodations. (WDE-25500-06)

393) On or about October 29, 2006, during a.m. sick call plaintiff requested to "RMU" nurse Judy to be seen by the audiologist because of his broken right hearing aid.

394) Based upon the information and belief "OMH" staff, notified "DOCS" staff of the need for an audiology follow-up prior to the plaintiff's discharge to "DOCS" on October 16, 2006.

395) On or about October 30, 2006, plaintiff wrote defendant Robert Raymond to advise him that plaintiff could not obtain reasonable accommodations at Wende C.F. despite his numerous

request for them; to ask his assistance in obtaining an
unscheduled transfer or protective custody; and to advise him
that plaintiff was being held in punitive segregation pending
disciplinary action for self mutilation that occurred on June 19,
20, 2006.[21]

396) On or about November 1, 2006, plaintiff sent a two page
letter to Donald Selsky, Director of Special Housing for the
Department of Correctional Services, advising him that plaintiff
was being pre-hearing confined in the "SHU" for incidents of self
harm stemming from his mental illness, that plaintiff had not had
disciplinary hearing in accordance with "DOCS" regulations; and
to ask his assistance in obtaining protective custody.

397) On or about November 1, 2006, during sick call in the
"SHU", plaintiff again requested to Dr. Jacquline Levitt, Md. to
be seen by the audiologist for the broken right hearing aid and
plaintiff requested treatment for his external hemorrhoids.

398) On or about November 3, 2006, a Superintendent's
hearing was commenced to adjudicate the charges of self
mutilation, contraband and disobeying a direct order, lodged
against the plaintiff on or about June 19, 2006, at "WENDE".

399) Plaintiff pled not guilty to the charges and the
hearing was adjourned to obtain confidential mental health
testimony until November 7, 2006.

400) Plaintiff alleges that defendants Kirkpatrick, Privett,
and Dekins decision to leave plaintiff confined in pre-hearing

---

[21] Plaintiff's principal psychiatric diagnosis is Borderline Personality Disorder and the main features of this
disorder is suicidal gestures and acts of self mutilation.

punitive segregation was cruel and unusual punishment and created an atypical and significant hardship because plaintiff was being punished due to symptoms of mental illnesses.

401) On or about November 8, 2006, plaintiff was released from "SHU" and housed on "B-99" to complete the remaining keeplock time imposed on him as a result of being found guilty as charged in the misbehavior reports dated June 19, 2006.

402) Plaintiff mailed to Director Donald Selsky, Special Housing/Inmate Discipline a seven (7) page administrative appeal challenging defendant Kirkpatrick's decision and Commissioner's Hearing Officer Kennedy imposed disciplinary sanction.

403) Plaintiff alleges he was never afforded due-process with respect to be placed into protective custody.

404) On or about November 8, 2006, plaintiff wrote to the "SDU" at "WENDE" for the third time since his return form "CNYPC" on October 16, 2006. He requested to be approved for the accommodations of hearing aids/batteries; preferred seating; shake awake alarm; and t-coil induction loop. He further advised the "SDU" that he still had not seen the audiologist concerning his broken right hearing aid.

405) On or about November 9, 2006, Mr. Zaluski, from the "SDU" at "WENDE" after a 20 day delay, provided plaintiff with two (2) hard plastic hearing aid cases; close caption television; and shake awake clock/alarm. Plaintiff was advised that he had been scheduled for an audiology consultation.

406) Plaintiff did not receive the requested reasonable accommodations of telephone amplification; t-coil induction loop;

and preferred seating.

407) Plaintiff cannot use the inmate collect phone without the use of a capable t-coil phone amplifier because he wears behind the ear (hereinafter "BTE") hearing aids.

408) The denial of telephone use to communicate with his family has created an atypical and significant hardship for the plaintiff. Other prisoners are allowed to use the inmate collect phones between 9:00 a.m. through 9:00 p.m. and plaintiff could as well if given the needed reasonable accommodation of a t-coil telephone amplifier. Defendant Ann Andzel is the "DOCS" employee at "WENDE" who is responsible to insure that the accommodational needs of deaf/hard of hearing prisoners are met.

409) Plaintiff alleges that all defendants are in contempt of the **Clarkson v. Goord**, consent judgment entered into my defendants "DOCS" and "OMH" before the Hon. Robert W. Sweet, U.S.D.J in the Southern District of New York in 1996 concerning the care and treatment of deaf and hearing impaired prisoners in their care, custody and control.[22]

410) On or about November 20, 2006, defendant Kirkpatrick's decision denying plaintiff's grievance against "SDU" staff was received.[23]

411) Plaintiff appealed to "CORC" stating that the grievance was not concerning his broken right hearing aid, but the continuous tacit denials of his requests for reasonable accommodations pursuant to "DOCS" own policy and procedures and

[22] Clarkson v. Goord, No. 91civ1792 (RWS) (1996 SDNY)
[23] WDE-25500-06 10/24/06

that plaintiff still had not yet received all the requested accommodations he is entitled to.

412) Further on or about November 20, 2006, plaintiff received the "IGRC" decision to his grievance challenging defendants Kirkpatrick and "DOCS" to house plaintiff in the "SHU" for self mutilation.[24]

413) Plaintiff appealed the "IGRC" decision to defendant Robert A. Kirkpatrick, Superintendent.

414) On or about November 21, 2006, plaintiff was served with a misbehavior report, charging him with the destruction of a state owned t-coil induction loop. Christopher Zaluski was the writer of the misbehavior report, endorsed by defendant Andzel.

415) Based upon information and belief this misbehavior report was filed to retaliate against plaintiff for exercising his first amendment right to file grievances. The damaged t-coil loop was voluntarily turned in to "SDU" on or about November 9, 2006, however the report was not written until eleven days later.

416) On or about November 22, 2006, plaintiff wrote to defendant Kirkpatrick alleging that defendant Ann Andzel and Mr. Christopher Zaluski, were retaliating against the plaintiff for his filing grievances and letters of complaints.

417) Further plaintiff filed a grievance complaint with "IGRC" alleging retaliation against the plaintiff by defendant Ann Andzel and Mr. Christopher Zaluski in filing the misbehavior report, because of the plaintiff's engaging in the

[24] WDE-25482-06 October 21, 2006

Constitutionally protected conduct of lodging grievance complaints.

418 ) On or about December 19, 2006, plaintiff was seen at medical sick call to request to be seen by the audiologist because his right hearing aid was still malfunctioning.

419 ) On or about December 26, 2006, plaintiff filed a complaint with the United States Department of Justice - Disability Rights Section, under Title II of the Americans with Disabilities Act of 1990 against "OMH" staff at "CNYPC."

420 ) Based upon information and belief, defendant "OMH" receives federal funding assistance for the operation of "CNYPC."

421 ) On or about December 27, 2006, plaintiff wrote to Ms. B. Aiello-Howe, Nurse Administrator at "WENDE" to request to be seen by the audiologist due to his broken right hearing aid and to request to be examined by the medical doctor because of bleeding external hemorrhoids.

422 ) On or about January 2, 2007, plaintiff met with defendant Privet, and Ms. D. Grey, his assigned primary therapist in the Intensive Intermediate Care Program (hereinafter "IICP") to report to them that plaintiff was being unlawfully discriminated against and harassed by "DOCS" employees because of plaintiff's sexual orientation.

423) The "I.I.C.P." is a jointly operated program under the dual supervision of defendants "OMH" and "DOCS."

424 ) On or about January 8, 2007, plaintiff received notice that his administrative appeal of his Superintendent's Hearing of November 7, 2006 was denied.

425 ) Plaintiff submitted a request for reconsideration to "DOCS" Central Office, based on the fact that plaintiff suffers from a chronic and persistent severe mental illness, and should not of been disciplined for symptoms of his severe mental illness.

426) On or about January 9, 2007, plaintiff received a copy of a letter written on his behalf by The Prisoners' Rights Project to "OMH" Deputy Commissioner and Counsel John Tavriello concerning plaintiff's inability to obtain reasonable accommodations for his bilateral hearing impairment while an inpatient of "CNYPC."

427) On or about January 9, 2007 plaintiff received the "CORC" decision denying his grievance appeal (WDE-25482-06) where plaintiff stated he was unlawfully confined to the "SHU" from October 20, 2006 till November 8, 2006 as a result of being disciplined because of his chronic and persistent severe mental illness.

428) On or about January 9, 2007, plaintiff spoke with Correction Counselor, John McGregor in the "I.I.C.P." to request his assistance in obtaining an audiology appointment.

429) On or about January 12, 2007, plaintiff filed an institutional grievance (WDE-25947-07) because of "DOCS" staff at "WENDE" failure to have plaintiff seen by the audiologist in a timely manner.

430) On or about January 16, 2007, plaintiff was seen at medical sick call to request to be seen by the audiologist, and to report lower back pain and inflamed bleeding hemorrhoids.

431) On or about January 17, 2007, plaintiff received a copy of a letter dated January 12, 2007 addressed to defendant Kirkpatrick from the Prisoners' Rights Project of the Legal Aid Society advocating for the plaintiff to have his right hearing aid repaired.

432) On or about January 18, 2007, plaintiff spoke with Senior Correction Counselor David R. Post and defendant Andzel in the "IICP" basement day room.

433) Defendant Andzel advised plaintiff that she had spoken with Nurse Administrator Howe and that she (Andzel) would look into the

situation.

434) On or about January 22, 2007, plaintiff received the "IGRC" decision granting the grievance of January 12, 2007 and advising the plaintiff that he would be seen by the audiologist on February 6, 2007. (WDE-25947-07)

435) Plaintiff requested review by the Superintendent.

436) On or about January 26, 2007, plaintiff received notice from "DOCS" Central Office that the Self mutilation hearing of November 7, 2007, was administratively reversed on January 25, 2007.

437) On or about January 31, 2007, at approximately 2:30 p.m., plaintiff met with Psychiatric Nurse J. Russell and defendant Privet, concerning plaintiff's concern that "OMH" staff were unlawfully releasing confidental mental health information to "DOCS" Security personnel.

438) Plaintiff told defendant Privet that based upon information and belief, plaintiff's right to medical privacy was being violated by "OMH" staff in the "I.I.C.P."

439) On or about February 2, 2007, plaintiff wrote a letter to the Regional Director Community Services Central New York Psychiatric Center, complaining of the ongoing unlawful discrimination and harassment of the plaintiff due to his sexual orientation.

440) On or about February 6, 2007, plaintiff's grievance appeal requesting to be seen by the audiologist was denied by decendant Kirkpatrick.

441) Plaintiff appealed defendant Kirkpatrick's denial to "CORC."

442) Plaintiff on February 6, 2007 was seen by the

audiologist and his right hearing aid sent out for repair.

443 ) As of February 6, 2007, plaintiff had been without use of his right hearing aid for four months.

444 ) On or about February 13, 2007, plaintiff requested to be seen by the medical doctor for bleeding external hemorrhoids, lower back pain and left leg calf muscle spasms.

445 ) On or about February 14, 2007, plaintiff was examined by Mr. John Hanavan, Nurse Practioner, who specializes in Orthropedics.

446 ) Plaintiff's rectal pain and bleeding hemorrhoids was not examined or treated.

447 ) On or about February 16, 2007, plaintiff wrote to "WENDE" Nurse Administrator Howe, concerning the inability to be examined by the medical doctor to have plaintiff's external hemorrhoids treated.

448) On or about February 20, 2007, plaintiff wrote a three page letter to defendant Privet concerning the still ongoing unlawful discrimination, harassment, and retaliation by "DOCS" staff in the "IICP" and plaintiff's inability to obtain an appointment with the facility medical doctor despite plaintiff's numerous sick call requests.

449) On or about February 26, 2007, plaintiff wrote to Acting Commissioner "DOCS" Brian Fischer, to request his assistance in obtaining adequate medical care for his external hemorrhoids, and his bilateral hearing impairment, and also advising him of all the attempts to address and resolve his medical concerns at the facility level.

450) On or about March 2, 2007, plaintiff wrote to Ms. Donna Lamb, Director of Quality Management at "CNYPC" concerning the harassment, discrimination of the plaintiff, as well as his inability to see the medical doctor for treatment of his external hemorrhoids.

451) On or about March 5, 2007, plaintiff was seen at medical sickcall and requested to see the medical doctor.

452) On or about March 8, 2007, plaintiff requested medical sick call, However, was not seen.

453) On or about March 9, 2007, plaintiff wrote a two page letter to defendant Kirkpatrick, complaining that plaintiff had not been able to see the medical doctor for treatment of his external hemorrhoids, despite his numerous sick call request beginning in November 2006.

454) On or about March 13, 2007, plaintiff requested medical sick call, However, was not seen.

455) On or about March 13, 2007, at approximately 12:30 p.m. on the second floor of the "I.I.C.P." plaintiff spoke to defendant Privet, and Kirkpatrick in the presence of Lt. A. Herzbiek and Co. D. Green, where plaintiff explained his difficulties in seeing the medical doctor.

456) On or about March 13, 2007, plaintiff submitted an institutional grievance with "I.G.R.C." (WDE-26302-07) complaining about not being able to see the medical doctor.

457) On or about March 13, 2007, plaintiff received his right hearing which was repaired.

458) On or about March 14, 2007, plaintiff during "MHU" A.M. Medication spoke with David Brumbeck, psychiatric nurse, to complain about not being seen by the medical doctor.

459) Based upon information and belief, defendants Privet and Kirkpatrick failed to insure that plaintiff was in the very least examined by the medical doctor, even after plaintiff reported to them that he was experiencing pain and bleeding, as a result of his untreated hemorrhoids.

460) On or about March 15, 2007, plaintiff attended "I.G.R.C." hearing for grievance WDE-26211-07 concerning plaintiff's inability to be examined for his complaints of physical pain in his rectum from inflamed bleeding hemorrhoids; and the failure of medical to have sickcall in the "I.I.C.P." and document those requests in his medical record. Grievance was filed on February 20, 2007.

461) On or about March 16, 2007, plaintiff received the "I.G.R.C." decision, and appealed to defendant Kirkpatrick.

462) On or about March 20, 2007, plaintiff attended a "I.G.R.C." hearing for grievance WDE-26302-07 concerning plaintiff's inability to receive adequate medical care in a timely manner and the non-existence of medical sick call in "IICP." Grievance was filed on March 13, 2007.

463) On or about March 23, 2007, plaintiff received the decision of the "I.G.R.C." and appealed the decision to defendant Kirkpatrick. (WDE-26302-07)

464) On or about March 28, 2007, plaintiff received the Superintendent response for his grievance concerning inability to see the primary medical cave doctor, which was filed on or about February 20, 2007. (WDE-26211-07).

465) Plaintiff appealed the denial of the above grievance appeal to "C.O.R.C.", thus exhausting his administrative remedies.

466) On or about March 29, 2007, plaintiff wrote to Correction Counselor John McGregor to request his assistance to insure that the Correction Officers assigned to the "WENDE" "MHU" cease interfering with plaintiff's access to the reasonable accommodations he is entitled to as mandated by "DOCS" policy and clearly established law.

467) Based upon information and belief defendants Kirkpatrick and "DOCS" have failed to adequately train their staff at "WENDE" as to how to work with Inmates With Sensorial Disabilities as agreed in the CLARKSON CONSENT DECREE.

468) On or about April 2, 2007, plaintiff received defendant Kirkpatricks response to grievance no. WDE-26302-07, denying grievance appeal.

469) Plaintiff appealed defendant Kirkpatrick's grievance appeal denial to C.O.R.C.

Dated: April 2, 2007
Alden, N.Y.

Respectfully Submitted,

Matthew John Matagrano
Plaintiff Pro-Se
# 04A5833
Wende Correctional Facility
3040 Wende Rd, P.o. Box 1187
Alden, N.Y 14004-1187

## VERIFICATION

STATE OF NEW YORK)
                  ss:
COUNTY OF ERIE )

    I, Matthew John Matagrano, being duly sworn to deposes and says:

    That I am the pro-se plaintiff in the within action, that I have read the foregoing Supplemental Complaint to the Second Amended Complaint and know the contents thereof; that the same is true to my own knowledge, except as to those matters herein to be Stated and alleged upon information and belief, and as to those matters I believe them to be true.

Dated: April 2         , 2007
    Alden, New York

Respectfully Submitted,

_Matthew John Matagrano_

Matthew John Matagrano
# 04A5883
Plaintiff Pro-se
Wende Correctional Facility
3040 Wende Rd., P.O. Box 1187
Alden, N.Y. 14004-1187

Sworn to before me
this 2 day of april        , 2007

_M Jacquelyen Kennedy_
NOTARY PUBLIC OF THE STATE OF NEW YORK

M JACQUELYEN KENNELY
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Feb 9, 2010